THOMAS F. HAYES, APPELLEE, V. HAROLD S. MCMULLEN, APPELLANT.

FILED FEBRUARY 21, 1935. No. 29240.

*Story & Thomas*, for appellant.

*W. M. Hopewell* and *W. K. Hopewell, contra*.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY and PAINE, JJ., and YEAGER, District Judge.

YEAGER, District Judge.

This is an action tried in the district court for Burt county, Nebraska, wherein Thomas F. Hayes, plaintiff and appellee, recovered a judgment against the defendant and appellant, under the workmen's compensation law of this state, for injuries claimed to have been sustained by him while he was employed by the defendant as the operator of a blade machine in the removal of snow from a public highway in Burt county. From the judgment the defendant has appealed to this court. The amount or size of the award is not in question in the errors complained of.

Appellant has made four assignments of error in his brief. It will be necessary to discuss only the first two, since a determination of the question of whether or not the plaintiff met with an accident as claimed, which is the first assignment, and whether or not the disability of plaintiff arose out of and in the course of his employment, which is the second assignment, will be determinative of the other two.

Without taking up the space necessary to refer specifically to particular evidence, it very definitely appears that on March 23, 1933, the plaintiff was in the employ of the defendant and was operating a blade machine, the purpose of which was to remove snow from the public highway. He was required to keep his eyes constantly upon the snow as it was being removed. On the day in question it was quite warm for that time of the

year and the sun shone brightly and he worked for about twelve hours. At the end of the day he was burned, as if sunburned, about the face and his eyes were inflamed. The condition of his eyes got steadily worse until the 28th of March, when he called upon Dr. Heacock of Lyons, Nebraska, who prescribed for him and ordered him to remain in a dark room. Two days later he was sent to an eye specialist at Sioux City, Iowa. He was confined in a hospital at Sioux City for a period of four days, when he returned to his home and the care of Dr. Heacock. He returned later to Sioux City and the hospital, where he remained for more than three weeks, after which he returned home and remained there, except for a period of one week some time later, which week he spent in the hospital. His eyesight has been seriously and permanently impaired and without question the progress of the condition leading to the impairment of vision entailed large expense and much suffering.

The progress of the condition was about as follows: In the afternoon of March 23, 1933, plaintiff noticed that his eyes and face were irritated and later in the week the face peeled. The eyes got worse. During the week an ulcer developed in the right eye. An ulcer developed in the left eye on or about May 18, 1933. There was a severe infection and ulceration on the conjunctiva and the cornea of both eyes, which was throwing off pus. There is little or no difference of opinion in the evidence either as to the progress of plaintiff's condition or the seriousness of its consequences.

A full and careful examination of the record discloses without dispute that plaintiff's condition of disability came about, either directly or indirectly, as a result of exposure to the sun's rays as outlined earlier in this opinion. The contention of defendant that the position of the plaintiff in this regard is speculative is not borne out by the evidence. The plaintiff has given the history of the case. The doctors called by plaintiff, one of

whom was a specialist in the treatment of eyes, had that history coupled with their own examinations and observation. Using this history and their own examination and observation as a basis, these witnesses have given it as their opinion that the plaintiff's condition was directly resultant from the burns received on March 23, 1933. The defense has introduced no evidence contradicting this position. The only claim made by the defendant is that the infection found was secondary, rather than primary, which is followed by the assertion that in a secondary infection the infection must be introduced from the outside unless it is present in a bad tear sac or something of that sort. The same undisputed evidence therefore shows that plaintiff was injured in the manner claimed by him and that such injuries arose out of his employment.

It is the declared policy of this court that the workmen's compensation act will be construed liberally, and technical refinement will not be allowed to defeat its purpose. *Esau v. Smith Bros.*, 124 Neb. 217.

It can hardly be doubted that the legislature had in mind, among other things, the protection of persons gainfully and honorably employed and who had received injuries in the course of their employment through no fault of their own, but could receive no compensation under common-law rules and who would be in danger of becoming public charges. They had in mind the placing of the burden upon the particular industry involved, rather than upon the public. Do, then, the evident purpose of the legislature and the declared policy of this court permit us to define the situation before us as an "accident?" The legislature has defined "accident" as follows:

"The word 'accident' * * * shall * * * be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." Comp. St. 1929, sec. 48-152.

The same section defines "injury," within the meaning of the workmen's compensation law, as follows:

"The term 'injury' and 'personal injuries' shall mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom."

The evidence in this case indicates that the condition of plaintiff was produced by "snow blindness" or "snow opththalmia," which is rare in this climate, and therefore we conclude that it was unexpected and unforeseen. There is no dispute upon the question of there being a burning in snow blindness, so therefore the attack upon the eyes of plaintiff was violent and the violence was to the physical structures of plaintiff's body. Was the injury brought about suddenly? If by "sudden" is meant instantaneous or practically so, then it was not suddenly produced. The condition complained of was the reflection of ultra violet rays of sunlight off of bright snow, which condition would have to continue for several hours before it would manifest itself or become known to the person exposed. The condition of plaintiff manifested itself the same day. Therefore, it would appear that the reasoning applied in *Taylor v. Evarts,* 261 Mich. 558, and *Dove v. Alpena Hide & Leather Co.,* 198 Mich. 132, should be made to apply herein in the interpretation of the word "suddenly."

We are therefore of the opinion that in a case of "snow blindness," which is a condition that requires several hours to manifest itself and is an unusual occurrence in this climate, and which, as in this case, did manifest itself by visible irritations during the day of exposure, is an accident, unexpected, unforeseen, happening suddenly and violently, and producing objective symptoms of injury to physical structures, within the meaning of the workmen's compensation law of Nebraska. In the light of this conclusion, it necessarily follows that the decision and judgment of the district court should be, and it accordingly is,

AFFIRMED.