CONSOLIDATED GAS UTILITIES CORP. et al. v. JETER et al.

No. 35159.   Dec. 11, 1951.

*238 P. 2d 804.*

H. R. Palmer and Fenton, Fenton & Thompson, Oklahoma City, for petitioners.

Clark Hurd, Oklahoma City, and Mac Q. Williamson, Atty. Gen., for respondents.

WELCH, J. Respondent Ila Mae Jeter, in her claim filed March 22, 1951, stated that on December 27, 1950, while in the employ of petitioner Consolidated Gas Utilities Corporation, and while engaged in operating key punch machines, she sustained an injury to the third fingers of both hands resulting in some permanent disability to the hands. The trial commissioner to whom the case was assigned for hearing at the conclusion of the evidence found:

"That in December, 1950, the claimant herein was afflicted with a disease in her hands known as Raynaud's disease; that she was not aware of her affliction; that on or about December 27, 1950, claimant sustained an accidental personal injury, arising out of and in the course of her hazardous employment with the respondent, that said injury was an accidental traumatic injury to the fingers of her right and left hands while using a key punch machine in the course of her employment and that her duties required her to hit or punch certain keys on said machines many times daily, thereby aggravating, precipitating and making manifest the affliction that had theretofore been dormant; that her work during the month of December, 1950, was unusually heavy since one of the three operators of said machine was inexperienced placing more work than usual upon claimant; that the precipitation of said disease was an unexpected result of her voluntary acts of operating said machine, and is compensable under the Workmen's Compensation Law of Oklahoma."

The commissioner further found that as a result of her injuries respondent is temporarily totally disabled; that she, however, kept on working from the date of the injury to February 15, 1951, at which time she discontinued working; that she is entitled to compensation at the rate of $25 per week, payments to be made until otherwise provided by the commission, not to exceed 300 weeks; that respondent did not give written notice of her injury as provided by statute, but that petitioners had actual notice thereof and suffered no prejudice by failure to receive the

written notice, and, upon such finding an award was entered awarding respondent compensation accordingly. The award was sustained on appeal to the commission en banc.

It is contended by petitioners that the evidence is wholly insufficient to sustain the finding of the commission that the injury sustained by respondent constituted an accidental injury; that the evidence discloses the disability from which she is now suffering is due to an occupational disease. We do not agree.

It is stipulated that although respondent's work was of a clerical nature, the United States Fidelity & Guaranty Company had a policy covering the employees of the Consolidated Gas Utilities Corporation including respondent and as such she would be entitled to compensation under estoppel law. 85 S. L. 1947, c. 3, §2; 85 O. S. Supp. 1947 §65.2; National Bank of Tulsa Building v. Goldsmith, 204 Okla. 45, 226 P. 2d 916.

Respondent testified that at the time she sustained her injury she was working as a key punch operator. The work consisted of punching holes in cards with the use of a card punching machine. She commenced working for petitioner on August 19, 1949; that the machines on which she worked have keyboards generally similar to that of a typewriter; that on the 27th day of December, 1950, the work she was required to do was unusually heavy; that her work required greater exertion than usual; that she was required to use her fingers on the keyboard more frequently; that the machine was not operating properly; that she had trouble with the duplicating machine, it did not duplicate a lot of figures and she had to punch them in; that her fingers became sore and numb and affected her hands; that she notified Ernest L. Lloyd, the superintendent of her employer, as to her condition. He advised her to see a physician and obtain treatment, which she did. She continued her work until the 15th day of February, 1951, at which time her fingers and hands became worse and she could no longer use the machine and was compelled to quit work; that prior thereto she had experienced no trouble or difficulty with her fingers and hands.

Two physicians testified as to the cause and extent of respondent's disability. The doctor who first treated her, after obtaining a history of the case and making an examination, and after testifying in detail as to her physical condition, and as to the condition of her fingers and hands, stated:

". . . I saw her, which was about the middle of December. She began to notice the pain, severe pain and when she came to me her fingertips at least four or five of them on the two hands were purple and there was hemorrhages under the tips of the nails and her fingers, all of her fingers on both hands were swollen particularly at the tips and I found that they did not have normal circulation. Her hands would stay white too long as compared with the wrist and arm and other parts of her body and they blanched when they should be pink. . . . I noted that the longer fingers of her hands were damaged worse, that the smaller fingers or shorter fingers, meaning the thumb and little fingers, and the three middle fingers were damaged the worse, and in my opinion it is characteristic of a trauma that has existed over a period of time. Now I doubt if any single trauma did this damage, I think it came on her gradually and she didn't know it or didn't complain about it. It was there before she ever came to the doctor, and then her delicate fingertips, her fingertips are very small, I inquired about the nature of this punching machine whether or not they had to hit it harder than they would a typewriter, and she said that she does, and it is my opinion that this is a vasa motor disturbance."

On cross-examination the doctor testified:

"Q. It has been testified here that along in December, . . . they had an unusual amount of work and an unusual amount of work that she did, in your opinion you think that may have something to do with precipitating it? A.

I do believe so. I don't have that history but if I did, I don't remember it, but it stands to reason that if they punch those things and shock the vessels and arteries a number of times in a day, they are more likely to cause it than it would otherwise.

"By the Court: The testimony before me is from the superior official here of the company, that during this period of time that this became manifest to her in the month of December, a busy month, that there were approximately fifty thousand of these cards went through the machine and there were three operators and she carried her part of the load, do you think that is sufficient to have precipitated this difficulty? By the Witness: Yes."

This doctor also testified that as a result of her condition respondent is temporarily totally disabled from operating the machine and in all probability would never again be able to do so.

The other doctor testified substantially as did the first. He testified that respondent's condition has its origin in trauma; that in his opinion it was the extra exertion caused by the frequent use of her fingers and the difficulty in operating the machine which precipitated and caused the disability from which she is now suffering.

The evidence taken as a whole is sufficient to sustain the finding of the commission that respondent's disability is due to an accidental injury as distinguished from an occupational disease.

In Oklahoma Steel Casting Co. v. Cates, 195 Okla. 646, 163 P. 2d 1013, this court stated:

"An 'accident,' within the meaning of the Compensation Law, is distinguished from an occupational disease, in that the accident arises by some definite event the date of which can be fixed with certainty but which cannot be so fixed in the case of occupational disease."

See, also, Atlas Coal Corp. v. Scales, 198 Okla. 658, 185 P. 2d 177; Vaughn & Rush v. Stump, 156 Okla. 125, 9 P. 2d 764.

The evidence clearly shows that respondent's condition is due to a definite event, the date of which can be fixed with certainty, the 27th day of February, 1950, and therefore is sufficient to sustain the award of the State Industrial Commission.

Award sustained.

HALLEY, V. C. J., and CORN, GIBSON, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.