DALE HARRINGTON, APPELLEE, v. MISSOURI VALLEY CONSTRUCTION COMPANY, A CORPORATION, ET AL., APPELLANTS.

155 N. W. 2d 355

Filed December 29, 1967. No. 36669.

Luebs, Tracy & Huebner and Vincent L. Dowding, for appellants.

Clark & Camp and Baylor, Evnen, Baylor & Urbom, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

This is a claim for benefits arising under the provisions of the Nebraska Workmen's Compensation Act. Benefits were awarded by the compensation court sitting en banc, the award affirmed by the district court for Hall County, and an appeal taken to this court by the defendants.

The plaintiff was employed by the Missouri Valley Construction Company, hereinafter referred to as defendant, as a mechanic from April 18, 1963, to January 18, 1966. Plaintiff claims he suffered a compensable accident on April 1, 1965, at which time he was being paid at the rate of $2.45 an hour on a 48-hour week basis. At the time of the accident he was 39 years of age and had been in good health prior thereto. There is no evidence in the record of any previous or subsequent injury or illness that could in any manner contribute to the compensable injury asserted in the present proceeding.

On April 1, 1965, plaintiff was working in the shop on a diesel motor of a truck. He was sitting on the

truck fender leaning toward the motor while performing his work. Pat Kinney, his helper, was at the same time on a creeper under the truck working on the lower part of the motor. For some undisclosed reason, Kinney left the scene of his work, leaving the creeper close to the side of the truck. Plaintiff descended from the truck fender to obtain additional tools, stepped on the creeper which rolled out from under him, causing him to fall some 3½ feet to the floor. He says he fell on his right buttock and arm in a semisitting position. The truck foreman, Earl Hollenbeck, immediately came to his assistance and helped him to his feet. He states that he immediately became deathly sick, was nauseated, was seized with cramps, and vomited. He was taken to a hospital in Grand Island, arriving there about 3 p.m., where he remained in bed for 3 days. He was given tests by Dr. Geer, but no extensive examination of his back was made. On his release from the hospital he returned to his work. He suffered no pain prior to the latter part of the following May although he states that he got more tired at the end of the day's work, a condition he had not previously experienced.

Plaintiff testifies that in the latter part of May 1965, he suffered pains in the thigh and calf of his right leg, particularly in the early morning hours while in a stooped position, which gradually wore off with physical activity. He says he had no pain in the back during this period which continued until November 1965. He continued to work for the defendant until January 18, 1966, when he quit his work on the advice of Dr. Kulowski. The record shows that plaintiff went to Dr. Kulowski in January 1966 who examined his back and caused X-rays to be taken by Dr. Fisher. After the examination by Dr. Kulowski, plaintiff lodged his claim with the defendant. On denial of the claim by the defendant, plaintiff returned to Nebraska from Missouri to prosecute his claim in the Workmen's Compensation Court. He was examined by Dr. Getscher for plaintiff

and Dr. Yost for the defendant after the filing of his claim. The evidence of Drs. Geer, Kulowski, Fisher, Yost, and Getscher is before the court. The proper disposition of the case is determinable largely from the medical evidence in the record.

Dr. Robert R. Geer, a general medical practitioner, examined and treated the plaintiff when he was taken to the hospital immediately following the accident on April 1, 1965. From the symptoms he then had and the history given him by the plaintiff, he diagnosed the case as acute gastroenteritis, commonly referred to by laymen as food poisoning. His white cell blood count was high, indicating the existence of infection. He treated the plaintiff by injecting glucose intravenously and a shot of morphine to relieve the pain. Plaintiff progressed steadily toward recovery and was released from the hospital 3 days later, apparently in good condition. Plaintiff made no complaints of pain in his back. There was no visual evidence of back injury and none was revealed by a palpation of the back area. Plaintiff informed Dr. Geer that he had eaten the same food as other employees who had suffered no deleterious effects. Dr. Geer testified that plaintiff's abdominal pains could have masked any pain in the back and that the morphine injection could have done likewise for a period of 3 to 5 hours. It was the opinion of Dr. Geer that plaintiff had suffered from food poisoning, a condition entirely unrelated to the fall at the shop.

When the pains in plaintiff's thigh and calf of the right leg began to accelerate in intensity, plaintiff left his employment and returned to his farm in Missouri. He sought the assistance of Dr. Jacob Kulowski, an orthopedic surgeon in St. Joseph, Missouri, who saw him on February 4, 9, and 14, 1966. It was Dr. Kulowski's opinion that plaintiff probably had a herniated or ruptured disc, but stated that a myelogram was needed to make a final determination. From X-rays taken by Dr. Fisher, he also testified to a pars interarticularis of

the lumbar spine which he described as a fibrous union across the bony bridge of the fifth lumbar vertebra. He diagnosed this as a congenital defect which had become disabling and in his opinion the fall mentioned in the history had some direct relation to it.

Dr. Joseph L. Fisher, a radiologist of St. Joseph, Missouri, took the X-rays at the instance of Dr. Kulowski on February 7, 1966. He found the pars interarticularis which he diagnosed as being congenital in origin, and not caused by trauma. He found the intervertebral spaces to be within normal limits and found no evidence of recent or old bone injury. He found no evidence of trauma in the back or pelvis, and noted the absence of pain in the back. He did not say that there was no ruptured disc as it was possible to have an obturated nucleus not determinable by X-ray and which could be found only by a myelogram examination. He found no slipping of vertebrae out of line, in other words, no determinable spondylolisthesis. He stated that plaintiff was more prone to injury because of the congenital pars interarticularis. He stated that a spondylolisthesis had not yet occurred, but a person with such a defective vertebra is a more vulnerable candidate for injury to his back or slippage of one vertebra on the other than is a person with a normal back in whose spine the bony parts have grown together properly.

On March 28, 1966, plaintiff filed his claim before the Nebraska Workmen's Compensation Court. The evidence of Drs. Yost and Getscher was thereafter procured. The medical meanings of pars interarticularis and spondylolisthesis become important in a consideration of the case. The physicians in this case define the pars interarticularis of the fifth vertebra as meaning that the lower part of the fifth lumbar vertebra is not fused solidly with the upper part and thus permits them to move independently of each other, creating an unstable condition. A spondylolisthesis means that one vertebra has slipped forward or backward on the vertebra above or below it. It is

made clear that a pars interarticularis is generally congenital and is not caused by trauma occurring after birth. In many cases such defects exist and cause no trouble throughout the life of the persons in which they exist.

On September 12, 1966, Dr. John G. Yost, an orthopedic surgeon at Hastings, Nebraska, examined the plaintiff. The history given by plaintiff was basically the same as that previously given except that he stated that his toes on his right foot continuously tingled as if they were asleep, his back was stiff, and that he could not bend forward very far. Dr. Yost examined the plaintiff and took X-rays of the back. He found the pars interarticularis which he designated as a pedicle defect of the fifth lumbar vertebra. He also found a first degree spondylolisthesis between the fifth lumbar and the first sacral vertebrae. He found some signs of nerve root irritation, but was unable to identify a ruptured disc in the absence of a myelogram which he did not procure. He found no signs of a recent or old injury. He states that plaintiff's complaints are not necessarily caused by trauma including the accident of April 1, 1965. He states his opinion that if the injury recited in the history was directly related to his present pain and symptoms, he would have had an onset of such pain and symptoms within 48 to 72 hours following the accident. There being no evidence of pain in the back or other symptoms within the period, it was Dr. Yost's opinion that the condition of plaintiff was not related to the fall that occurred on April 1, 1965.

Dr. Phil Getscher, an orthopedic surgeon of Lincoln, Nebraska, testified at the hearing before the compensation court held on November 23, 1966. He first examined plaintiff on April 13, 1966, at which time he took X-rays. At this time he found the pars interarticularis and a beginning spondylolisthesis in the fifth lumbar vertebra. He caused additional X-rays and a myelogram to be taken on October 11, 1966, and from them discovered a ruptured intervertebral disc. He stated that the pars

interarticularis appeared to be congenital and had existed during the life of the plaintiff. He testified, that an injury resulting in an uncomplicated ruptured disc ordinarily produces pain within 48 to 72 hours, but where, as here, two factors exist, such as the pars interarticularis and a ruptured intervertebral disc, the symptoms such as pain may not appear until more extended periods of time. He states that in the case of the spondylolisthesis or slipping vertebra, the portions of bone are held together by ligaments and do not cause pain until the ligaments are weakened or damaged, and permit the bone to slip. He states that the lack of pain within 48 to 72 hours is not significant or unusual because of the unusualness of the two factors involved. He places significance on the pain in the thigh and calf of the right leg in the latter part of May 1966 because this indicates the point of time the nucleous had slipped far enough to begin irritating the nerve. Dr. Getscher states that there was a slipping when he examined the plaintiff, that he did not know when it occurred, and that such slipping was a competent producing cause of pain. He relates plaintiff's present condition to the fall on April 1, 1965, as follows: "The cause-and-effect relationship is established on the basis of my examination and the findings and X-ray with these points: He denies prior pain; he did not consult a physician prior to this time with these complaints; he has an established defect in the neural arch; he has an established ruptured intervertebral disc; he has clinical findings that support the X-ray findings and the history, and, in turn, the history supports the clinical findings insofar as the appearance of nerve root irritation and strain in the lower back. I would like to point out as I did before, that this is an unusual case where two conditions are present in the same area in the lower back. In my opinion the injury caused sufficient change in the spondylolisthesis so that there was not only a cause for the disc to later slip, but also a cause for the delay in the appearance of nerve

root symptoms." Dr. Getscher gave it as his opinion, based on reasonable medical certainty, that plaintiff has a ruptured intervertabral disc as a result of the injuries sustained on April 1, 1965. He further states that plaintiff is totally disabled from performing work until he has surgical correction by fusing the section of the back here involved to prevent further slipping and consequent pains. It is his further opinion that a surgical operation will reduce his present total disability to a 15 percent disability of the body as a whole.

Defendant contends that the evidence fails to show any objective symptoms of injury at the time of the accident. It is the theory of the defendant that the symptoms testified to by plaintiff immediately following the accident are not shown to be in any way related to the back injury of which he now complains. The evidence does show that immediatly following the fall from the truck fender, plaintiff became deathly sick, was nauseated, and vomited. We think these were objective symptoms within the meaning of the statute. In Manning v. Pomerene, 101 Neb. 127, 162 N. W. 492, this court said: "It is also said that no 'objective symptoms' of an injury appeared at the time, and that these elements are essential. We agree with this argument so far that the accident must produce 'at the time objective symptoms of an injury,' but the difficulty is as to what constitutes objective symptoms. Defendant's idea is that by objective symptoms are meant symptoms of an injury which can be seen, or ascertained by touch. We are of the opinion that the expression has a wider meaning, and that symptoms of pain, and anguish, such as weakness, pallor, faintness, sickness, nausea, expressions of pain clearly involuntary, or any other symptoms indicating a deleterious change in the bodily condition may constitute objective symptoms as required by the statute." See, also, Knudsen v. McNeely, 159 Neb. 227, 66 N. W. 2d 412. If the position of defendant is the correct one, an employee could never recover for accidents where the symptoms were

delayed or the injuries latent. This is not the intent of the workmen's compensation law. The issue is one of causal relationship between the accident and the claimed injury. "The requirement that objective symptoms of an injury be produced 'at the time' of the accident is satisfied if the symptoms manifest themselves according to the natural course of such matters without any independent intervening cause being shown. * * * There is no evidence in this case of any intervening cause of the plaintiff's disability." Schoenrock v. School Dist. of Nebraska City, 179 Neb. 621, 139 N. W. 2d 547.

The burden of proof is on the plaintiff, not only to show that he sustained a personal injury by an accident arising out of and in the course of his employment, but he must also establish by evidence leading to a direct conclusion or by a legitimate inference therefrom that such accident caused the disability. Anderson v. Cowger, 158 Neb. 772, 65 N. W. 2d 51.

Drs. Kulowski and Getscher testify that in their opinion the present disability of the plaintiff is disabling and that it is caused in whole or in part by the fall of April 1, 1965. Dr. Yost testifies that plaintiff's complaints of back pains and other concurring pains were not necessarily caused by trauma and states in his opinion plaintiff's disability was not caused by the fall because no pain in the back existed within 48 to 72 hours after the accident. We point out, however, that Dr. Getscher testifies that under the unusual circumstances of this case, it is not unusual for such pains to manifest themselves for a delayed period of time for the reasons we have stated in a review of his testimony. His testimony in this respect was not contradicted by other expert testimony. Since this testimony for the plaintiff is not challenged, the credibility of Dr. Getscher is our only concern and we have found no reason to question its reliability. After giving due consideration to all the evidence, the history and nature of the accident, and the sequence of events following the accident, we are

of the opinion that the evidence of plaintiff preponderates over that of the defendant, and that plaintiff was disabled because of the fall on April 1, 1965, within the meaning of the Workmen's Compensation Act.

Defendant asserts that error was committed in the allowance of the claim of the Grand Island hospital for $62.15 for services rendered plaintiff immediately following plaintiff's fall on April 1, 1965. The evidence shows by the testimony of Dr. Geer that plaintiff was suffering from food poisoning at the time, that plaintiff responded to treatment on such a diagnosis, and that the fall was in no way related to the difficulty for which he was hospitalized. There is no dispute in the record on this question. No expert states or offers his opinion to the effect that this hospitalization was or could have been the result of the accident. The most that any doctor said was that this hospitalization was of no significance in determining if the back injury was caused by the accident of April 1, 1965. There is a complete want of proof that this item of expense was a result of the accident, the only proof being to the contrary. This item of expense is not chargeable to the employer.

Plaintiff requests this court to allow him an attorney's fee for services rendered by his attorney in this court. The rule is clear that an attorney's fee may be allowed only where the employer fails to obtain a reduction of the award in this court. But here the employer is entitled to a reduction of the award. This defeats a claim for an attorney's fee in this court. § 48-125, R. R. S. 1943. See, also, Anderson v. Bituminous Casualty Co., 155 Neb. 590, 52 N. W. 2d 814; Werner v. Nebraska Power Co., 149 Neb. 408, 31 N. W. 2d 315.

The allowance of the claim of St. Francis Hospital is reversed. The award of the district court is otherwise affirmed. An allowance of an attorney's fee is denied. Costs of the appeal are taxed to the defendant.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.