ALEX SALINAS, APPELLEE, v. CYPRUS INDUSTRIAL MINERALS CO., APPELLANT.

247 N. W. 2d 451

Filed December 15, 1976. No. 40640.

Richard L. Huber of Higgins, Higgins & Huber, for appellant.

Cunningham, Blackburn, VonSeggern & Livingston, for appellee.

Heard before SPENCER, McCOWN, and NEWTON, JJ., and CANIGLIA and COADY, District Judges.

McCOWN, J.

This is a workmen's compensation case. Plaintiff's petition was dismissed by the one-judge Workmen's Compensation Court. Upon rehearing before the Workmen's Compensation Court en banc, plaintiff received a weekly award for temporary total disability for so long as it continued, together with medical costs. An award for residual permanent partial disability is to await the cessation of total temporary disability. The employer has appealed.

Alex Salinas had worked for Cyprus Industrial Minerals Co. for almost 17 years with one break in the employment in 1962 because of a back injury. The business of Cyprus consisted chiefly of grinding rocks into talc. Salinas was a leadman in a position of some authority. Salinas' work was physically demanding and required using a sledge hammer, moving rocks, and tightening bolts, among other things.

About 8:30 p.m., on Friday, April 18, 1975, while working the swing shift, Salinas went up on top of the packer bins to clean magnets. There was standing water and talc on the top of the bin. Salinas slipped and fell on his back. An employee operating the packer heard the noise and saw talc powder float down from the top of the bin. Salinas lay there for a few mo-

ments because of the pain and then got up and went down below and told the man running the packer that he had fallen. Salinas had wet talc powder from his neck to his ankles on his back, and the packer operator tried to blow it off with an airhose. The packer operator then entered the accident in the daily schedule book. Salinas later told the maintenance man about his fall so that the maintenance man could clean up the water on top of the bin. Salinas worked the rest of his shift that night.

Salinas' next work day would have been Monday. On Monday Salinas called in that he would not report to work because of an accident at his home on Sunday in which he had received some nail scratches on his back and his hand in tearing down a building. On Monday afternoon Salinas went to Dr. House, an orthopedic surgeon. His stated reason was because his leg was sore and he had difficulty walking, and his back hurt. On his original visit to Dr. House, Salinas did not mention the Friday night fall nor the Sunday nail incident, but did mention a car accident in 1960, and said that he had had pain in his back and right hip for some 20 years. Dr. House had first seen Salinas in 1962 for a minor back complaint arising out of another work-related accident. The doctor testified that there was suspicion of a disc lesion on the basis of the 1962 findings, but that no extensive testing had been done.

On Wednesday, April 23, 1975, Dr. House had Salinas go to the hospital to have tests done and saw Salinas again on May 5, 1975, at which time he diagnosed Salinas' problem as a small intervertebral disc protrusion at the L4, L5 level on the right side. Salinas was placed in a heavy lower back brace and advised that if this treatment was not successful, he would have to undergo surgery.

Three days after his second office visit, Salinas wrote Dr. House a letter telling the doctor of two work accidents that might have precipitated his problem, one

on February 26, 1975, and the other one the accident of April 18, 1975. References to both those accidents had been recorded in the daily records of the defendant. In December 1974, Salinas had an accident which involved an injury to his shoulder for which he was treated by his family physician. Dr. House was not advised of that accident, nor of the nail accident of April 20, 1975. He had knowledge of the 1960 car accident, the 1962 work accident, and the accidents of February 26, 1975, and April 18, 1975. There is no evidence that Salinas ever missed work because of his back except for the occasion in 1962 when he hurt his back in a work-related accident.

Dr. House testified that in his opinion the falls or accidents which Salinas incurred on February 26, 1975, and April 18, 1975, aggravated the preexisting weakness in the patient's lower lumbar spine. Dr. House also testified that his opinion was based on the fact that there was documented evidence that Salinas had clinical symptoms of vertebral disc injuries which dated back to 1962. Dr. House recommended conservative treatment with a heavy back brace for the time being and testified that the plaintiff was not able to perform the work he had been doing for defendant.

The three-judge Workmen's Compensation Court, over the dissent of one judge, awarded Salinas $89 per week for temporary total disability to the date of the hearing and for so long in the future as he should remain totally disabled, together with medical costs, and ordered that if total disability ceased, Salinas should receive the statutory amounts of compensation for any residual permanent partial disability due to the accident and injury.

The defendant contends that there were no objective symptoms of an injury at the time of the accident, and that the findings of fact are not supported by the evidence.

Section 48-151, R. R. S. 1943, defines the word "acci-

dent" to mean "an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." Defendant contends that because no one except the plaintiff observed any objective symptoms of an injury at the time Salinas fell on the top of the bin there can be no recovery under the Workmen's Compensation Act.

Even under previous statutory language defining "accident" as an unforeseen event rather than an unforeseen injury, we said: "The requirement that objective symptoms of an injury be produced 'at the time' of the accident is satisfied if the symptoms manifest themselves according to the natural course of such matters without any independent intervening cause being shown." Schoenrock v. School Dist. of Nebraska City, 179 Neb. 621, 139 N. W. 2d 547. In that case we also said: "There is no statutory requirement that the symptoms be observed by others or that the existence of the symptoms be proved by independent testimony." There is no evidence in the case now before us that objective symptoms of an injury did not manifest themselves according to the natural course of such matters. In fact, the thrust of the defendant's argument is that the injury was not caused by a compensable accident but resulted from some other source.

The fundamental issue in this case involves the effect of the findings of the Nebraska Workmen's Compensation Court and the sufficiency of the evidence to support its award. Under the new statutory procedures for workmen's compensation cases, appeals from the judgments, orders, or awards of the Workmen's Compensation Court are taken directly to the Supreme Court, and there is no longer a de novo review in this court.

Section 48-185, R. S. Supp., 1976, provides in part: "The findings of fact made by the Nebraska Workmen's Compensation Court after rehearing shall have the

same force and effect as a jury verdict in a civil case. A judgment, order, or award of the Nebraska Workmen's Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the court acted without or in excess of its powers, (2) the judgment, order, or award was procured by fraud, (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award, or (4) the findings of fact by the court do not support the order or award."

Under the language which makes the findings of fact by the Workmen's Compensation Court after rehearing have the same force and effect as a jury verdict, it is obvious that related rules as to verdicts in civil cases also come into play. We have consistently held that in testing the sufficiency of the evidence to support a verdict, it must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in his favor and he should have the benefit of every inference that can be reasonably drawn therefrom. Speedway Transp., Inc. v. DeTurk, 183 Neb. 629, 163 N. W. 2d 283. We now hold that in testing the sufficiency of the evidence to support the findings of fact made by the Nebraska Workmen's Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be drawn therefrom. Obviously the findings of fact after rehearing are not required to be unanimous in order to have the statutory effect.

The findings of fact of the Nebraska Workmen's Compensation Court on rehearing were that on April 18, 1975, while engaged in the duties of his employment, the plaintiff suffered injuries to his back as a result of an accident arising out of and in the course of his employment by the defendant; that his fall on a packer bin aggravated a preexisting back condition; and that

he was temporarily totally disabled and would remain so for an indefinite period of time. There is sufficient competent evidence in the record to warrant the making of those findings of fact and to support the award to the plaintiff.

AFFIRMED.