DOROTHY SANDEL, APPELLEE, V.
PACKAGING COMPANY OF AMERICA, APPELLANT.
317 N.W.2d 910

Filed April 2, 1982. No. 44388.

Theodore J. Stouffer and Patrick B. Donahue of Cassem, Tierney, Adams, Gotch & Douglas, for appellant.

Betty L. Egan and J. Joseph McQuillan of Walsh, Walentine, Miles, Fullenkamp & O'Toole, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

KRIVOSHA, C.J.

The appellant, Packaging Company of America (PCA), the employer of Dorothy Sandel (Sandel), appeals from an order entered by a three-judge Workmen's Compensation Court upon rehearing which found that Sandel had sustained a compensable accident for which she was entitled to receive workmen's compensation benefits. The principal error assigned by PCA is that the three-judge compensation court erred in finding that Sandel had sustained an accident within the meaning of the Nebraska Workmen's Compensation Act, Neb. Rev. Stat. §§ 48-101 to 48-1,109 (Reissue 1978). We affirm.

PCA, a manufacturer of cardboard boxes, has employed Sandel since 1967. Her first work for PCA involved operating a semiautomatic labeling machine. In 1970 she became an airhammer operator. Her work involved making creases in a load of cartons and removing excess material off of the boxes. Sometime between 1970 and 1973 Sandel developed a "radial humeral bursitis" in her right arm. She was required to be away from her work for approximately 3 to 4 weeks and to receive medical treat-

ment by Dr. Joseph Gross. Following the treatment, she returned to work and continued as an airhammer operator for approximately 1 more year. During that time she experienced no difficulty with her arm. In 1974 or 1975 PCA transferred Sandel from her position as an airhammer operator to that of a forklift driver, where again she experienced no difficulty with her right arm.

In November of 1979 Sandel was assigned the job of running a "slitter-scorer" machine. This machine takes, cuts, and creases pieces of cardboard. To perform her task, Sandel would stand by her machine at which a pile of corrugated sheets would be set. She would put her arm underneath the sheets of cardboard, pick them up, turn them over, and put them on top of the machine, usually three at a time. The sheets varied in size, but were ordinarily 80 x 97 inches, though they could be as large as 120 inches. Each sheet weighed 6 to 8 pounds. When Sandel had placed approximately 10 sheets on the machine, she would feed the pieces through the machine one at a time. She would have to give each piece of cardboard a shove to get it into the machine. Once the pieces came out of the other side of the machine, Sandel would take the pieces of cardboard off the machine with the same lifting, turning motion she used to place them on the machine. In a single shift, Sandel would process approximately 300 sheets.

According to her own testimony, Sandel began to experience physical discomfort when she transferred from her job as a forklift driver to that of operating the slitter-scorer machine. In December of 1979 or January of 1980 she began to have problems with her left arm. At that time she consulted a physician but missed no work. In March of 1980 Sandel first began to notice pain in her right elbow which gradually became worse until May of 1980 when she was unable to continue work. Specifically,

on the morning of May 29, 1980, at 11:30 a.m., she noticed that her arm had begun swelling and that the pain had increased severely. She reported to the first aid station and a doctor's appointment was arranged for her. Ultimately, the first physician referred her to Dr. Timothy Fitzgibbons who first saw Sandel on June 12, 1980. Dr. Fitzgibbons diagnosed her condition as "lateral epicondylitis"—an inflammation of the lateral epicondyle, the bony prominence by the elbow. This condition is commonly referred to as "tennis elbow."

Dr. Fitzgibbons testified that in his medical opinion, based upon the objective symptoms and Sandel's history, her condition was the result of repetitive flexion-extension of her hand and wrist due to her employment. Dr. Fitzgibbons further testified that when a condition had remained dormant for a long period of time and then reoccurred, he would be reasonably certain that the reoccurrence was due to the most recent trauma experienced. Dr. Fitzgibbons further testified that while bursitis or tennis elbow is a fairly common affliction of life, it generally arises because of specific activities which require repeated flexion and extension of the arm over a substantial period of time. In this regard, Sandel testified that her off-work habits did not require her to engage in any repeated flexion-extension activity over long periods of time. The evidence indicated that the only time she engaged in repetitive flexion-extension activity was in the course of her employment.

At the first hearing the single-judge Workmen's Compensation Court found that Sandel had sustained a compensable accident and entered an award of temporary total disability, as well as the payment of various medical expenses incurred in connection with her treatment. On rehearing, a majority of the three-judge court affirmed the finding of the single-judge court but modified the award to the extent

that Sandel receive the sum of $158.13 per week from June 4, 1980, to January 23, 1981, and thereafter, and in addition thereto, the sum of $158.13 per week for 21.5 weeks for 10 percent permanent partial disability to her right arm. Sandel was further awarded an attorney fee in the amount of $500 for the services of her attorney in the rehearing. It is from that award that PCA appeals to this court, principally contending that the compensation court erred in finding that Sandel had sustained an accident within the meaning of the Nebraska Workmen's Compensation Act.

Specifically, PCA's argument is to the effect that the evidence in this case fails to disclose the requisites of a compensable injury under the act, to wit, (1) an external cause of accidental character, whether a single traumatic event or a combination of traumatic events, or an internal effect which was unexpected or unforeseen, (2) either of which occurs suddenly and violently, and (3) which produces at the time objective symptoms of injury.

Furthermore, PCA argues that where the disability is caused by both a personal risk and employment exertion, the employee must prove that the employment exertion is greater than the exertion of an average person's nonoccupational life and that the employment exertion materially and substantially contributed to the resultant disability.

In proceeding to review an appeal from a three-judge Workmen's Compensation Court, we are limited in what independent action we may take. In *Davis v. Western Electric,* 210 Neb. 771, 778, 317 N.W.2d 68, 72 (1982), we again pointed out the oft-cited rules to the effect that "[i]n reviewing workmen's compensation cases this court . . . ' "is not free . . . to weigh the facts anew. Our standard of review accords to the findings of the compensation court the same force and effect as a jury verdict in a civil case and will not be set aside unless clearly

wrong." ' " See, also, *Erving v. Tri-Con Industries,* 210 Neb. 339, 314 N.W.2d 253 (1982). Furthermore, in *Davis, supra* at 778, 317 N.W.2d at 72, we said: "[T]he order of the compensation court ' "may be reversed or set aside with respect to the evidence only where there is not sufficient evidence in the record to warrant the order or judgment. In testing the sufficiency of the evidence to support the findings, every controverted fact must be resolved in favor of the successful party and he should have the benefit of every inference that can be drawn therefrom . . . . Such findings on rehearing will not be set aside on appeal unless clearly wrong." ' " See, also, *Mack v. Dale Electronics, Inc.,* 209 Neb. 367, 307 N.W.2d 814 (1981). Therefore, unless we can find that as a matter of law the compensation court was in error, we are required to affirm their decision even though, had we been making the factual decision in the first instance, we might have reached a contrary conclusion.

We turn then first to PCA's argument that before Sandel can recover, she must prove that her employment exertion was greater than an average person's nonoccupational life and that the employment exertion therefore materially and substantially contributed to her disability. We believe that our decision in *Engel v. Nebraska Methodist Hospital,* 209 Neb. 878, 312 N.W.2d 281 (1981), adequately answers that contention. In *Engel, supra* at 882-83, 312 N.W.2d at 285, we said: "The exertion 'greater than nonemployment life' test has been applied by this court *only* in cases involving heart attacks allegedly caused by the activities or stress of employment. *Chrisman v. Greyhound Bus Lines, Inc., supra; Sellens v. Allen Products Co., Inc., supra; Hyatt v. Kay Windsor, Inc.,* 198 Neb. 580, 254 N.W.2d 92 (1977); *Newbanks v. Foursome Package & Bar, Inc.,* 201 Neb. 818, 272 N.W.2d 372 (1978); *Beck v. State,* 184 Neb. 477, 168 N.W.2d 532 (1969); *Brokaw v.*

*Robinson,* 183 Neb. 760, 164 N.W.2d 461 (1969).

"The rationale for the rule is discussed at some length in *Sellens, supra* at 509-11. Where a person suffers from a preexisting condition which he claims is aggravated by his employment, he has an increased burden of proving causation. The exertion 'greater than nonemployment life' test is simply an application of the increased burden of proof required in preexisting condition cases to the unique problems of proving causation of a myocardial infarction. We find no reason to extend the rule to other cases where the proof of causation is not usually as complex." (Emphasis supplied.)

While it may be true that because of Sandel's previous history with bursitis, she bears a greater burden of proving that her present condition is as a result of an accident arising out of and in the course of her employment, she does not have the burden of proving that her employment exertion was greater than her nonemployment life exertion. As we note in *Engel,* that is limited only to heart attack cases and is not extended to other cases.

The basic question which we must then answer is whether the compensation court was in error in finding that the injury suffered by Sandel was indeed caused by an accident arising out of and in the course of her employment, and was, as found by the compensation court, controlled by our decision in *Crosby v. American Stores,* 207 Neb. 251, 298 N.W.2d 157 (1980). The essence of PCA's argument may best be understood by examining the language of its brief, when it says at 14-15: "[PCA] does not argue *Crosby* was erroneously decided or should be overturned. [PCA] does not argue there is no medical evidence in this case which relates [Sandel's] employment activities to her tennis elbow and resultant disability. The evidence in this case establishes [Sandel] developed, over a period of time, bursitis or tennis elbow at least in part as a result of her activities at work.

"However, [PCA] does submit *Crosby* does not control the result in the instant case. The requirements of the Compensation Act and *Crosby* as to the elements necessary to prove an 'accident' have not been met."

PCA maintains that the record in this case will not disclose even a single traumatic injury or a series of traumatic injuries sufficient to constitute an accident. It is that question which we therefore must address.

Under the provisions of the Nebraska Workmen's Compensation Act, an accident is defined as "an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." § 48-151(2). The statutory definition of accident therefore consists of three separate elements which must be established in order for an employee to recover. The first element is that the injury must be "unexpected or unforeseen." The second element is that the accident must happen "suddenly and violently." And, third, the accident must produce "at the time objective symptoms of an injury." While the language of the act is quite precise and clear, the realities of life do not always provide us with such clear-cut recorded events from which we may decide whether an accident, as defined by the Workmen's Compensation Act, has occurred. Nevertheless, an examination of the cases decided by this court over the years does, in our view, sustain the action taken by the three-judge compensation court in this case.

Regarding the first element, that the injury must be unexpected or unforeseen, we have said that the unexpected or unforeseen requirement of the Nebraska Workmen's Compensation Act is satisfied if *either* the cause was of an accidental character or if the effect was unexpected or unforeseen. See, *Eliker v. D. H. Merritt & Sons,* 195 Neb. 154, 237

N.W.2d 130 (1975); *Brokaw v. Robinson,* 183 Neb. 760, 164 N.W.2d 461 (1969). One simply cannot say that the compensation court was in error in finding that the resultant injury in this case was either unexpected or unforeseen. Certainly there is not any evidence to indicate that the action taken by Sandel was intentional in the sense that she continued to bend her elbow in order to cause injury or that a reasonable person would know or understand that by performing the duties of one's work in accordance with instructions given by the employer one could expect or foresee that disabling bursitis would develop. It would appear that the compensation court was correct in concluding that at least the first element of a statutory accident had been met.

With regard, then, to the third element, that the accident must produce objective symptoms at the time of the injury, we likewise believe that the requirement has been met. This court has quite often said that the objective symptoms requirement of the Nebraska Workmen's Compensation Act is satisfied if the symptoms manifest themselves according to the natural course of such things without any independent intervening cause. *Wolfe v. American Community Stores,* 205 Neb. 763, 290 N.W.2d 195 (1980); *Salinas v. Cyprus Industrial Minerals Co.,* 197 Neb. 198, 247 N.W.2d 451 (1976); *Harrington v. Missouri Valley Constr. Co.,* 182 Neb. 434, 155 N.W.2d 355 (1967); *Schoenrock v. School Dist. of Nebraska City,* 179 Neb. 621, 139 N.W.2d 547 (1966). " 'We are of the opinion that the expression has a wider meaning, and that symptoms of pain, and anguish, such as weakness, pallor, faintness, sickness, nausea, expressions of pain clearly involuntary, or any other symptoms indicating a deleterious change in the bodily condition may constitute objective symptoms as required by the statute.' " *Harrington v. Missouri Valley Constr. Co., supra* at 441, 155 N.W.2d at 359.

No serious dispute can be raised in this case that there were not objective symptoms. Sandel felt pain in her arm upon changing jobs and the pain steadily increased until it effectively prevented her from doing her job. Additionally, she testified that her arm became swollen just prior to her leaving work on May 29, 1980. No one can reasonably argue that a swollen arm and the inability to move the arm so as to be able to perform one's work, together with apparent signs of pain and discomfort requiring medical attention, are not objective symptoms of an injury.

This then leaves us with the sole element that the accident must happen "suddenly and violently." While there appears to be few, if any, cases in Nebraska which have directly addressed this problem, there are cases from which we may glean the meaning of "suddenly and violently." It is clear that, for purposes of the Nebraska Workmen's Compensation Act, "suddenly and violently" does not mean "instantaneously and with force," but rather the element is satisfied if the injury occurs at an identifiable point in time requiring the employee to discontinue employment and seek medical treatment. In the case of *Hayes v. McMullen,* 128 Neb. 432, 259 N.W. 165 (1935), a workman sought to recover under the Workmen's Compensation Act for snow blindness which he had suffered after being exposed to ultraviolet rays from the sun which were reflected off the snow. Although the definition of accident in 1935 included the word "event" rather than the current word "injury," the language of *Hayes* is nevertheless applicable to our examination of what is meant by "suddenly and violently" within the meaning of the Nebraska Workmen's Compensation Act. In *Hayes, supra* at 436, 259 N.W. at 167, we said: "The evidence in this case indicates that the condition of plaintiff was produced by 'snow blindness' or 'snow opththalmia,' which is rare in this climate,

and therefore we conclude that it was unexpected and unforeseen. There is no dispute upon the question of there being a burning in snow blindness, so therefore the attack upon the eyes of plaintiff was violent and the violence was to the physical structures of plaintiff's body. Was the injury brought about suddenly? If by 'sudden' is meant instantaneous or practically so, then it was not suddenly produced. The condition complained of was the reflection of ultra violet rays of sunlight off of bright snow, which condition would have to continue for several hours before it would manifest itself or become known to the person exposed. The condition of plaintiff manifested itself the same day. Therefore, it would appear that the reasoning applied in *Taylor v. Evarts,* 261 Mich. 558, and *Dove v. Alpena Hide & Leather Co.,* 198 Mich. 132, should be made to apply herein in the interpretation of the word 'suddenly.'

"We are therefore of the opinion that in a case of 'snow blindness,' which is a condition that requires several hours to manifest itself and is an unusual occurrence in this climate, and which, as in this case, did manifest itself by visible irritations during the day of exposure, is an accident, unexpected, unforeseen, happening suddenly and violently, and producing objective symptoms of injury to physical structures, within the meaning of the workmen's compensation law of Nebraska."

In *Hayes, supra,* therefore, we concluded that "suddenly and violently" did not mean in a moment, but could occur over a period of hours.

In *Brokaw v. Robinson,* 183 Neb. 760, 164 N.W.2d 461 (1969), we extended the concept of "suddenly and violently" to recognize the realities of life and the fact that an accident, within the meaning of the Nebraska Workmen's Compensation Act, could be caused by a series of repeated traumas, each of which acting individually may not be sufficient in force to produce a sudden and violent accident but

which ultimately produces such a result, and none of which may be observable until disability occurs. In *Brokaw, supra,* the employer suffered a cerebral vascular accident with paralysis of the right arm and leg, and facial paralysis. We said in *Brokaw, supra* at 763, 164 N.W.2d at 464: "The defendant contends that mere exertion ordinarily incident to the employment cannot constitute an accidental injury and that exertion combined with a preexisting disease or condition does not constitute a compensable injury. We cannot agree.

. . . .

"The change in the workmen's compensation statute clearly removes the necessity of finding a single traumatic event as the cause of an injury."

In *Brokaw* we recognized that the nature of the human body being such that it is, not all injuries to the body are caused instantaneously and with force, but may indeed be nevertheless suddenly and violently, even though they have been building up for a considerable period of time and do not manifest themselves until they cause the employee to be unable to continue his or her employment.

In *Crosby v. American Stores,* 207 Neb. 251, 298 N.W.2d 157 (1980), relied upon by the compensation court, we recognized the difficulty of attempting to place every injury into a clear category. We said in *Crosby, supra* at 254-55, 298 N.W.2d at 159: "Part of the difficulty in this case is that the plaintiff's injury has some of the characteristics of both an accidental injury and an occupational disease.

"The plaintiff's use of her hands to strike the pallets and boxes caused an injury which produced objective symptoms at the time. Each striking was a sudden and violent event. Although no one blow produced an injury severe enough to be compensable by itself, the cumulative effect of the repeated trauma resulted in an injury which produced disability. Most jurisdictions regard the time of acci-

dent as sufficently definite if either the cause is reasonably limited in time *or the result materializes at an identifiable point.* 1B Larson, Workmen's Compensation Law § 39.00 (1980). The facts in this case satisfied both tests. The plaintiff's difficulty with her hands commenced immediately after she was transferred to stack and record. In that respect, this case may be distinguished from cases involving chronic conditions which develop over a period of many years where the injury cannot be traced to a particular job or activity of the workman." (Emphasis supplied.)

We concluded in *Crosby* that the requirement that an accident must be caused "suddenly and violently" was satisfied if, as a result of repeated injury to the body, an identifiable disability at a point in time occurred, even though the employee failed to recognize what was happening each time she struck her hand.

We reached a similar conclusion for a similar reason in *Erving v. Tri-Con Industries,* 210 Neb. 339, 314 N.W.2d 253 (1982). The noted workmen's compensation authority, Larson, in his recognized work in this area, supports the view suggested here. In 1B Larson, Workmen's Compensation Law § 39.40 (1980), Larson suggests that the occurrence of pain and the need for medical attention is sufficient to designate the occurring of an accident "suddenly and violently" even though the initial effect of the pain and the subsequent injury may have been much earlier and simply continued to build until it reached the point at which the employee could no longer perform the required work.

Several other jurisdictions with statutes identical to ours have reached similar conclusions. In *Scanlan v. Bernard Lbr. Co., Inc.,* 365 So. 2d 39 (La. App. 1978), the employee had undergone a laminectomy but his recovery was good and he resumed full-time employment as a mill superintendent. Fol-

lowing his return to work the employees of the company went on strike, with the result that management and supervisory personnel had to run the mill. At this point plaintiff's job involved heavy manual labor, whereas his regular job as superintendent did not involve such duties. After several days of this heavy labor, plaintiff's back began to suffer from pain and he was unable to return to work. The medical evidence confirmed that the heavy work caused his disability, but there was no evidence as to a single traumatic event which precipitated his condition. The court, nevertheless, found that even though there was no impact-type accident or trauma or no single accident, the plaintiff had suffered a series of accidents each time he picked up a piece of timber and loaded it on a truck or fed it into a planer or shaper. The court concluded that when, on June 16, 1976, he was no longer able to work, his accident was "sudden and violent."

Likewise, in *Consolidated Gas Utilities Corp. v. Jeter,* 205 Okla. 471, 238 P.2d 804 (1951), the Oklahoma Supreme Court permitted an employee to recover for injury to her hands which rendered them useless even though there was no evidence of a specific traumatic event occurring suddenly and violently. The evidence disclosed that the difficulty ultimately experienced by the employee occurred over a period of a year and was caused by reason of her operating a keypunch machine. In affirming the recovery for the employee, the Oklahoma court took the position that the date on which the employee notified her employer that she was suffering this great difficulty and was no longer able to work was sufficient to establish a sudden and violent accident within the meaning of a statute similar to ours.

Likewise, the evidence in the instant case would seem to support the compensation court's conclusion that the holding in *Crosby* was controlling and that the instant injury was caused "suddenly and vio-

lently." Dr. Fitzgibbons specifically testified that, in his opinion, it was the work done by Sandel on the slitter-scorer machine which caused the bursitis. He testified that her current injury could be traced to this particular job or activity because no other job which she had held during this time period required her to constantly move and bend her wrist and arm, and, secondly, because she testified that she did not do any kind of repetitive motion of this nature while at home. Nor did she experience any pain or disability until she started her last job.

While the medical fact of the matter is that the injury was occurring repeatedly over a period of time, it is clear that on May 29, 1980, at 11:30 a.m., Sandel suffered a sudden and violent injury in that she was unable, because of the pain and swelling, to continue her employment, and from that moment on was unemployed as a result of, according to the medical testimony, an injury caused by her employment.

Trauma to the body may be caused by actions other than direct blows. It is fair to conclude from the evidence in this case that each movement by Sandel constituted a traumatic event experienced by her arm and wrist even though no blow could be observed because the trauma was occurring inside the skin covering rather than on the outside. On the basis of those facts, we believe it can be said that all of the elements of an accident under the Workmen's Compensation Act were met. We cannot say as a matter of law that the compensation court was in error in concluding that indeed an accident within the meaning of the Nebraska Workmen's Compensation Act had occurred. We believe that we are therefore required to affirm the findings of the compensation court in granting to Sandel the award it made.

PCA raises one further issue. It maintains that the compensation court was in error in awarding

Sandel attorney fees on rehearing because PCA had succeeded in obtaining a reduction in the award. We do not believe that to be the case. We believe, again, that the compensation court on rehearing was correct. In the order originally entered by the single judge, Sandel was awarded temporary total disability for as long as total disability continues. That was necessary apparently because at the time of the hearing before the single judge, Sandel had not yet attained maximum healing and it was impossible at that time to determine how much longer she would be temporarily totally disabled. The sole issue on rehearing was whether or not the injury was compensable at all under the Workmen's Compensation Act. No issue was ever raised as to the amount of recovery, nor did PCA ever contend that the amount of the disability should be certain rather than continuing. It was only because the court, on rehearing, found that by the time the rehearing was held before them, Sandel had reached maximum healing of her injury, and therefore the temporary total disability need not continue indefinitely but could be fixed at a time certain, that any modification was made. This is not a reduction in the amount of the award as contemplated by the statute. Where an employee's injury, which previously was diagnosed as continuing, attains maximum healing so that on further hearing a definite permanent award can be made, the employer is not deemed to have obtained a reduction in the award so as to deprive the employee of a statutory right to an attorney fee. The compensation court was correct in awarding an attorney fee.

The judgment of the three-judge compensation court is therefore affirmed in all respects. Appellee Sandel is awarded a fee of $1,000 in this court.

AFFIRMED.

CAPORALE, J., dissenting.

I must respectfully dissent, for I fear the members

of the majority have this day cast aside their judicial robes and donned the mantle of legislators.

Our Legislature has seen fit to require that an injury, to be compensable under our Workmen's Compensation Act, result from an "accident." One of the elements of an accident, as defined in that statute, is "an . . . injury happening suddenly and violently . . . ." Neb. Rev. Stat. § 48-151(2) (Reissue 1978).

The majority opinion traces the history of certain of our decisions interpreting the sudden and violent requirement. However, the indispensable fact which satisfied the requirement in each of the cases allowing recovery, namely, trauma, is lacking in the case at hand. In *Hayes v. McMullen,* 128 Neb. 432, 295 N.W. 165 (1935), it was the burning of the eyes by reflected sunlight; in *Brokaw v. Robinson,* 183 Neb. 760, 164 N.W.2d 461 (1969), it was the breaking of a body structure; in *Crosby v. American Stores,* 207 Neb. 251, 298 N.W.2d 157 (1980), it was the repeated striking of items; and in *Erving v. Tri-Con Industries,* 210 Neb. 339, 314 N.W.2d 253 (1982), it was the repeated application of pressure. Here, there was nothing. Though the condition manifested itself while plaintiff was at work, it came on not suddenly and violently, but gradually. Compensation is allowed merely because the employment required repeated movement of plaintiff's arm and hand. This result so attenuates the requirement of "an . . . injury happening suddenly and violently" as to have virtually written it out of the act. Is the arthritic hip of the deliveryman gradually caused by the repeated movement of the leg and foot in walking, and which causes objective symptoms during a moment at work, to be compensable?

Even if the coverage extended by the majority were indeed to be considered the more desirable policy, that determination should be made by those elected to do so after an opportunity to study and

debate the economic and other issues involved.

I submit, as did dissenting Judge Novicoff of the Workmen's Compensation Court, that this case is controlled by *Eliker v. D. H. Merritt & Sons,* 195 Neb. 154, 237 N.W.2d 130 (1975), which denied compensation on the ground an accident was not established merely by proving the employment required a great deal of bending, stooping, and twisting of the body in picking up and moving 100-pound sacks of sand, plaster, and cement. I would reverse and dismiss.

CLINTON and HASTINGS, JJ., join in this dissent.