VIRGINIA PARIS, APPELLANT, V. J. A. BALDWIN
MANUFACTURING COMPANY, A CORPORATION, AND
MARYLAND CASUALTY COMPANY, APPELLEES.
342 N.W.2d 198

Filed January 6, 1984. No. 83-023.

Jeffrey H. Jacobsen of Jacobsen, Orr & Nelson, for appellant.

William J. Ross of Ross, Schroeder & Fritzler, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

This is an appeal in a proceeding under the Nebraska Workmen's Compensation Act. Plaintiff-

appellant, Virginia Paris, was an employee of defendant J. A. Baldwin Manufacturing Company. Defendant Maryland Casualty Company was Baldwin's compensation insurance carrier. The two defendants are hereinafter referred to collectively as Baldwin.

Plaintiff was injured on June 13, 1979, when she tripped and fell forward as she entered Baldwin's place of business. She landed on her hands and injured her cervical spine and shoulder, and her hands. It is not disputed that these injuries arose out of, and in the course of, her employment.

After continuing to work for approximately 2 months, plaintiff sought medical assistance. Sometime before December 10, 1979, an electromyelogram confirmed the presence of bilateral carpal tunnel syndrome. On January 25, 1980, bilateral carpal tunnel releases were carried out. This operation apparently was wholly satisfactory, but plaintiff continued to have pain in her neck and shoulder area. In May 1980 plaintiff's doctor prescribed a transcutaneous nerve stimulator (TENS), a device used to relieve pain. The record is not clear, but it appears that the TENS unit was required only because of the pain in the plaintiff's neck and shoulder area.

In January of 1981 plaintiff filed her petition in the Workmen's Compensation Court. On May 19, 1981, plaintiff obtained an award giving her temporary total disability benefits from August 29, 1979, to April 29, 1981, and for an indefinite time in the future. Plaintiff was also awarded medical, hospital, and physical therapy expenses, and "such vocational rehabilitation services, including retraining and job placement as may be reasonably necessary to restore her to suitable employment." The award as to rehabilitation was made subject to the specific condition that "[i]f the plaintiff, without reasonable cause . . . fails . . . to cooperate in a reasonable program of rehabilitation, the Court may upon application of the defendant, suspend, reduce or limit the

compensation otherwise payable under the Nebraska Workmen's Compensation Law.''

No appeal was taken from this award, and, in fact, in February of 1981, before the award, Baldwin had hired a rehabilitation expert to work with plaintiff. Baldwin complied fully with the May 19, 1981, award. Plaintiff underwent testing, and as part of her rehabilitation, obtained her general equivalency degree from high school and satisfactorily completed one trimester of an accounting course. The second trimester of that accounting course began in January of 1982. Plaintiff did not register for the second trimester, and dropped the course.

On May 13, 1982, Baldwin filed its application asking for a modification of the May 19, 1981, award, seeking to reduce or limit compensation payable to plaintiff because of plaintiff's refusal to cooperate in a reasonable program of rehabilitation. On August 19, 1982, a single judge of the compensation court granted Baldwin's application; found that plaintiff had ''failed to cooperate in a reasonable program of rehabilitation''; terminated plaintiff's temporary total disability as of January 4, 1982; and awarded plaintiff a permanent partial disability of 10 percent of the body as a whole. Plaintiff applied for rehearing of this award. On rehearing before a three-judge panel, with one judge dissenting, the award was generally affirmed but modified to reduce the permanent partial disability to 5 percent. This appeal by plaintiff followed. For the reasons hereinafter stated we affirm the award on rehearing.

Plaintiff's assignments of error may be grouped into two main points. First, plaintiff alleges that the compensation court erred in finding that plaintiff failed to cooperate in a reasonable program of rehabilitation, and, second, that the compensation court erred in finding that plaintiff had a 5-percent permanent partial disability rather than finding that plaintiff was totally disabled.

Basic to our review of such questions is Neb. Rev.

Stat. § 48-185 (Reissue 1978), which provides in pertinent part: "The findings of fact made by the Nebraska Workmen's Compensation Court after rehearing shall have the same force and effect as a jury verdict in a civil case. A judgment, order, or award of the Nebraska Workmen's Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the court acted without or in excess of its powers, (2) the judgment, order, or award was procured by fraud, (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award, or (4) the findings of fact by the court do not support the order or award."

Cases decided under this statute have clearly established the guidelines for our review. As stated in *Newbanks v. Foursome Package & Bar, Inc.*, 201 Neb. 818, 823, 272 N.W.2d 372, 376 (1978), "Findings of fact made by the Nebraska Workmen's Compensation Court after rehearing have the effect of a jury verdict and will not be set aside on appeal unless clearly wrong. In testing the sufficiency of evidence to support findings of fact made by the Nebraska Workmen's Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party." See, also, *Husted v. Peter Kiewit & Sons Constr. Co.*, 210 Neb. 109, 313 N.W.2d 248 (1981).

With regard to plaintiff's first assignment of error that the compensation court erred in finding that plaintiff failed to cooperate in a reasonable program of rehabilitation, the record, viewed in the light most favorable to Baldwin, discloses the following: Baldwin had initiated a program of rehabilitation in February of 1981, some 3 months before the initial award. Plaintiff was extensively tested and assessed at Baldwin's expense. Plaintiff was then 51 years old and had gone through ninth grade in high school. Testing showed that she had an aptitude for clerical office work and that she had a background

in office work in that she had helped her husband at one time in running a small store and gasoline station. Plaintiff's program was then directed toward that kind of work. Arrangements were made and plaintiff obtained her general equivalency high school degree. Baldwin then arranged for plaintiff to take bookkeeping and accounting courses, offered by the Central Technical Community College, at Lexington High School. The courses were offered over a 9-month period, divided into 3-month trimesters.

Plaintiff took the first trimester, beginning in September of 1981 and concluding in December. She did what was described as excellent work and grasped the material well, and passed the course. She then told the rehabilitation counselor that she was not going to start the second trimester because her shoulder and back were bothering her.

Prior to this time, plaintiff's counselor had written to plaintiff's doctor asking for an update on plaintiff's condition, and specifically asking how the daily school routine was affecting her medical condition. The response to this inquiry was a one-line letter, dated December 1, 1981: "I can not give a permanent partial disability rating at this time."

In connection with plaintiff not continuing on with her rehabilitation program, the plaintiff's medical condition, and how it was affected by the schooling, is all-important. We search the record in vain for any medical opinion in this area. It is true that plaintiff herself testified, at the rehearing and on cross-examination, that she went to her doctor in December and her doctor told her that he thought she needed to drop schooling and get away from whatever "is tensing you up." The doctor testified by deposition and no such testimony was developed. Indeed, there is little questioning at all on that vital point. With regard to plaintiff's ability to continue her schooling, the following exchange is the total of plaintiff's own doctor's testimony on that issue:

"Q [By plaintiff's counsel] . . . Now, Virginia was taking some courses, I believe, in accounting through the rehabilitation department, and I believe her testimony will indicate that she had considerable problem with aching and so forth and did not feel at least in her mind that she could continue. Do you find any support medically for her complaints in that regard? That might not be phrased the best way in the world. Do you want me to rephrase it? A [By plaintiff's doctor] Well, all I have is her testimony that when she tried to go to school and do the studying, her back pain and her neck pain became so severe that she just wasn't able to handle it. I don't have any physical evidence to substantiate that. Q As a physician, do you have an opinion as to whether that makes any sense? A That is what I would expect based upon what I already knew about Virginia."

Further testimony of plaintiff's orthopedic doctor states that, as of August of 1982, plaintiff's complaints were entirely subjective; there was no muscle atrophy, no neurological deficits, no tenderness on examination, and no impairment or limitation of motion in the shoulder.

The examination of Baldwin's orthopedic specialist disclosed generally the same physical findings. This doctor, in his examination of April 9, 1982, evaluated plaintiff as follows: "It is my feeling that this woman's symptoms and signs were about the same as they were when I previously examined her [18 months before]. Her subjective complaints far outweigh any objective findings. I think that she has a trapezius sprain. I think that with an exercise program, her symptoms should be minimal. I feel that she is a very nervous woman and that this no doubt contributes to the symptoms that she complains of."

Additionally, the rehabilitation counselor, on July 14, 1981, and September 30, 1981, arranged for plaintiff to apply for a job for the last part of 1981.

Plaintiff refused to fill out and mail such applications for such work, which was of the type she was preparing herself for in school. Plaintiff's counselor concluded his report terminating his efforts at rehabilitation by writing to defendants, "At this time, I feel there is nothing more we can do vocationally for this client." His frustration is evident in the "MEDICAL Discussion" in that final report, when he states: "We have made attempts to obtain information from Dr. Ellis about the client's condition, but have only received copies of his progress rate indicating she has not improved and his opinion has not changed. Our request and his answers are totally unrelated. We have received nothing indicating she can't handle the courses and any sitting, either from the client or her physician."

Outside of plaintiff's own testimony on rehearing, the record is devoid of any other evidence that plaintiff could not handle the rehabilitation schooling. The compensation court apparently did not believe plaintiff's testimony. Since there is evidence showing that plaintiff was handling the schooling adequately, and no medical evidence is presented that she could not continue to do so, there is no reason to disturb the compensation court's findings and determination that plaintiff did fail to cooperate in a reasonable course of rehabilitation and that such failure was willful.

With regard to plaintiff's contention that the court erred in not finding her totally disabled and in finding her permanent partial disability at 5 percent of the body as a whole, we need only note that, as stated in *Boults v. Church*, 200 Neb. 319, 321, 263 N.W.2d 478, 480 (1978), "[w]hether or not the plaintiff is totally and permanently disabled, and is entitled to receive the maximum allowable benefits, is a question of fact." In this case plaintiff's doctor determined plaintiff was totally disabled. This determination was based entirely on plaintiff's complaints of pain and on no objective medical findings.

Baldwin's orthopedic doctor evaluated plaintiff's permanent partial disability at 5 percent of the body as a whole. The compensation court determined this question by adopting the evidence of the 5-percent disability rating. As stated in *Cain v. La Grange Steel Erectors, Inc.*, 195 Neb. 272, 277, 237 N.W.2d 640, 643 (1976), quoting from *Marion v. American Smelting & Refining Co.*, 192 Neb. 457, 222 N.W.2d 366 (1974), " 'Where the record in a case reflects nothing more than a resolution of conflicting medical testimony, there appears no purpose in this court substituting its judgment of facts for the judgment of the compensation court.' "

There was sufficient evidence to support the compensation court's findings and determination in all respects.

The order on rehearing is affirmed.

AFFIRMED.