ROGER KNUDSEN, APPELLANT, V. METROPOLITAN UTILITIES
DISTRICT, APPELLEE.

374 N.W.2d 56

Filed September 27, 1985.   No. 84-954.

Richard J. Schicker, for appellant.

Randall W. Owens, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

SHANAHAN, J.

Roger Knudsen appeals dismissal of his petition by a three-judge decision after rehearing in the Nebraska Workmen's Compensation Court. We affirm.

Knudsen had been employed by Metropolitan Utilities District of Omaha (MUD) since March 1967 as an automotive analyst. Knudsen's duties included general automotive repair on welders, lawnmowers, and all MUD fleet cars and trucks, as well as assisting other mechanics in diagnosing problems of MUD's vehicles. On June 1, 1977, Knudsen, while repairing a gasoline-operated welder, sustained an injury to his right eye. Knudsen reported the accident to his supervisor and, later, on June 10, saw the company doctor, to whom he made complaint about irritation in the right eye. The doctor's examination disclosed a piece of ferrous material which the physician removed from Knudsen's right eye. There were five subsequent visits by Knudsen to the company doctor for treatment.

In November 1977 Knudsen, still suffering eye irritation, consulted Dr. McIntire, who prescribed medication which eliminated the ocular irritation but who, on account of scar tissue at the site of the injury, could not determine the extent of the damage to Knudsen's eye until an additional 6 months to 1 year had elapsed.

In April 1979 Knudsen again visited Dr. McIntire and complained about a loss of vision in the injured right eye. Dr. McIntire referred Knudsen to Dr. Priluck, who examined Knudsen several times and then recommended a visit to the Mayo Clinic for tests. During Knudsen's visit to the Mayo Clinic in 1980, physicians prescribed bifocals for Knudsen, who returned to Omaha, where he was subsequently examined by Dr. Priluck on five occasions.

Knudsen's vision continued to deteriorate during 1982. In February 1983 Knudsen was examined by Dr. Cox at the University of Nebraska Medical Center. Dr. Cox gave Knudsen an eye examination and diagnosed Knudsen's problem as a

separated lens in his right eye. Dr. Cox also suggested an electroretinogram for Knudsen to determine whether there was a piece of steel causing the lens separation in Knudsen's right eye. After the electroretinogram Dr. Cox referred Knudsen to Dr. Sutton in Lincoln. At the time of his visit to Dr. Sutton in February 1984, Knudsen was seeing triple out of his right eye. Dr. Sutton theorized that the trauma to Knudsen's right eye explained a number of the problems experienced by Knudsen.

MUD accepted Knudsen's claim as compensable under the Nebraska Workmen's Compensation Act and made its last payment of Knudsen's medical expenses in February 1978. Knudsen filed his petition in March 1984. After dismissal of Knudsen's petition at the one-judge hearing, Knudsen requested a rehearing.

At the rehearing, evidence included letters from the various physicians. In his May 14, 1981, letter to MUD's attorney, Dr. Priluck wrote: "At this time, I cannot definitively determine the underlying etiology of this problem." In a January 4, 1982, letter to MUD's attorney, Dr. Priluck stated:

> With respect to the exact etiology of his ocular problem, I cannot still identify the cause of his decreased accommodation with medical certainity [sic]. This case is unusual and clouded by the fact he has seen several different ophthalmologists and a moderate amount of time has elapsed since the injury in 1977.

Dr. McIntire wrote to MUD's attorney on September 30, 1981: "After careful review of my records and this material from the many ophthalmologists he has seen, I do not know the etiology of his decreased accommodation in the right eye."

On February 25, 1983, Dr. Cox wrote to Dr. Priluck: "The question of the etiology of the unilateral lens changes needs to be resolved. I suppose there is a small chance that there was a retained intraocular foreign body from his injury. Certainly we found no evidence on our examination for this." Some months later, on August 15, 1983, Dr. Cox in his letter to Knudsen's attorney expressed the following: "[M]y examination indicates that there is a possibility that his vision problem was related to his injury at work. I do not think this is likely, but without an electroretinogram this condition cannot be excluded as

work-related."

Finally, in a letter to Knudsen's attorney on February 20, 1984, Dr. Cox stated:

I discussed this case with Dr. Greg Sutton, who is experienced in diseases of the anterior portion of the eye. He agreed to examine Mr. Knudsen for evidence of old trauma. At this point I do not think that his condition in the right eye is related to the injury that he suffered. However, until this condition is diagnosed we cannot absolutely exclude that injury or its treatment as a factor in his difficulties.

Dr. Sutton testified: "We know he did have a trauma at that time and soon a visual problem, and based on my medical knowledge, I would say that there is a very good possibility that the cataracts, the decrease of vision are related to trauma that occurred at about that time."

Dr. Faier, the company doctor and the first physician who examined Knudsen after the accident, wrote to MUD's attorney on August 17, 1984: "My impression is that, 100% that this problem is in no way related to the foreign body injuries, or to the treatment given to mend the eye for this foreign body," and testified at the rehearing: "The foreign body in the external part of his eye did not cause it" (referring to the condition and loss of vision in Knudsen's right eye).

The findings of fact made by the Nebraska Workmen's Compensation Court after rehearing shall have the same force and effect as a jury verdict in a civil case. A judgment, order, or award of the Nebraska Workmen's Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the court acted without or in excess of its powers, (2) the judgment, order, or award was procured by fraud, (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award, or (4) the findings of fact by the court do not support the order or award.

Neb. Rev. Stat. § 48-185 (Reissue 1984).

" 'In testing the sufficiency of evidence to support findings of fact made by the Nebraska Workmen's Compensation Court after rehearing, the evidence must be considered in the light

most favorable to the successful party.' " *Paris v. J. A. Baldwin Mfg. Co.*, 216 Neb. 151, 154, 342 N.W.2d 198, 200 (1984).

This court stated in *Thomas v. Kayser-Roth Corp.*, 211 Neb. 704, 711, 320 N.W.2d 111, 115 (1982): "We are not at liberty to substitute our views for those of the Workmen's Compensation Court regarding questions of fact if there is evidence in the record to substantiate its conclusions." Furthermore, "[w]here the record presents nothing more than conflicting medical testimony, this court will not substitute its judgment for that of the compensation court." *Doty v. Aetna Life & Casualty*, 217 Neb. 428, 435, 350 N.W.2d 7, 10 (1984).

The present case involves a parade of expert witnesses. Evidence from the various physicians fluctuated from Dr. Sutton's opinion that the accident caused Knudsen's injury to the directly opposite opinion given by Dr. Faier, namely, the accident did not cause Knudsen's injury. Sandwiched between the opposite opinions expressed by Dr. Sutton and Dr. Faier were conclusions by other examining physicians who expressed that they were unable to determine the cause of Knudsen's affliction. The record contains sufficient competent evidence to allow the Workmen's Compensation Court to accept one opinion over another. The findings of the Workmen's Compensation Court on rehearing are not clearly wrong and are affirmed. Because Knudsen's claim failed due to a lack of proof of causation, any question about applicability of the statute of limitations need not be answered. The judgment of the Nebraska Workmen's Compensation Court dismissing Knudsen's petition is affirmed.

AFFIRMED.