FRED G. HOLLINGER, APPELLANT, V. CONSOLIDATED MOTOR
FREIGHT, APPELLEE.
390 N.W.2d 518

Filed July 18, 1986.   No. 85-709.

J. Michael Moriarty, for appellant.

Harry R. Henatsch of Katskee & Henatsch, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE,
SHANAHAN, and GRANT, JJ.

GRANT, J.

This action was brought by appellant, Fred G. Hollinger, to
recover workers' compensation benefits from the appellee,
Consolidated Motor Freight (hereafter CMF). Hollinger was
injured while working for CMF on March 11, 1983, and filed a
petition with the Nebraska Workers' Compensation Court on
January 14, 1985. An award was entered in Hollinger's favor on
May 6, 1985. This award determined that Hollinger was
temporarily totally disabled from the date of the injury to
September 6, 1984, and thereafter Hollinger had suffered an
80-percent permanent loss of use of the great toe of his left foot.
Hollinger then sought rehearing of the order of the single judge

before a three-judge panel of the compensation court. The three-judge panel affirmed. Hollinger has since timely appealed to this court. We affirm.

Evidence adduced before the panel on rehearing showed the following. Hollinger was injured on March 11, 1983, while in the course and scope of his employment with CMF at CMF's truck terminal in Omaha, Nebraska. Hollinger testified that on that date a box, 80 to 85 pounds in weight, fell off a pallet onto his left foot. The pallet had been hoisted 4 or 5 feet in the air by a forklift which was loading the pallet onto a truck. Hollinger was employed by CMF as a foreman, truckdriver, and dockworker. Hollinger also testified he had been with CMF for 17 years and that prior to his employment with CMF, he had been employed primarily as a truckdriver for 23 years.

As a result of the box's falling on his foot, Hollinger suffered a crush injury to the left great toe. The injury was diagnosed as a comminuted interarticular fracture of the interphalangeal joint of the left great toe and an avulsion fracture from the middle phalanx of the second toe. Hollinger was initially treated in the emergency room at Methodist Hospital in Omaha. X rays were taken, which revealed a fractured toe. The treatment recommended to Hollinger at that time was to take Tylenol, rest the foot, and apply icepacks.

Three days later, Hollinger was seen by his personal physician, Dr. James Horrocks, who later referred him to Dr. William McAvoy, a podiatrist. Dr. McAvoy treated Hollinger by casting his foot two or three times over a 3- to 4-month period. The pain still persisted, and on September 29, 1983, Dr. McAvoy did exploratory surgery of the interphalangeal joint of the left great toe, and fusion. Fusion was accomplished by surgically removing osteophytes in the left great toe and performing a peg-in-hole arthrodesis of the interphalangeal joint, with K-wire fixation. Dr. McAvoy released Hollinger to return to work in mid-March 1984.

At that time Hollinger was still suffering pain in his foot. He then saw Dr. Timothy Fitzgibbons, an orthopedic surgeon, on March 15, 1984. Dr. Fitzgibbons started Hollinger on physical therapy, to try to alleviate some of the symptoms that he had and to desensitize his foot. Hollinger was also started on

anti-inflammatory medication. Hollinger saw Dr. Fitzgibbons again, 1 month later on April 17, 1984. At this time Dr. Fitzgibbons noted that Hollinger should still be considered totally disabled. In general, Dr. Fitzgibbons felt that Hollinger's major problem was that of sympathetic type dystrophy.

Dr. Fitzgibbons eventually released Hollinger to return to work. Hollinger returned to work in November 1984, but he was not able to perform the duties of his job, and his return lasted only 10 days. From March of 1983 to November of 1984, Hollinger did not work but instead stayed at home.

Hollinger testified that in September or October of 1984 he began to experience back pain. He testified the pain covers the entire spine, radiating from the small of the back all the way up to the neck. Hollinger was examined by Dr. Fitzgibbons on March 14, 1985, and x rays revealed that Hollinger's spine showed degeneration in both the cervical and lumbar areas, with spondylosis. Hollinger continued to have pain in his back area at the time of trial.

It was Dr. Fitzgibbons' opinion that the injury to Hollinger's toe also caused his back pain. Dr. Fitzgibbons noted that prior to his injury to the toe, Hollinger had not experienced any back or neck pain. Dr. Fitzgibbons testified by way of deposition that the toe injury caused Hollinger to alter his normal walking gait. Dr. Fitzgibbons testified that a person with a toe problem has "to walk with somewhat externally rotated leg" and thus rotate the leg in a different way, which would put excess stress on the back. Dr. Fitzgibbons testified that this excess stress on the back led to Hollinger's back and neck pain.

The record also shows that prior to his accident of March 11, 1983, Hollinger had degenerative arthritis. The symptoms to this condition were asymptomatic prior to the accident. Dr. Fitzgibbons testified that the toe injury "lighted them [symptoms] up." Hollinger had received caudal blocks for the pain. Dr. Fitzgibbons considered Hollinger totally disabled.

Dr. Gerald Paul, an orthopedic surgeon, examined Hollinger in August and October of 1984, and on June 7, 1985. Dr. Paul concluded that there was no "correlation between his [Hollinger's] work related injury of March 11, 1983 and his present spinal complaints." It was also his opinion that

Hollinger could return to his usual and customary occupation, provided that he wore a safety boot.

At the time of trial Hollinger complained of pain in his back and neck, that he had difficulty walking, and that his toe swelled up. Hollinger testified that he was unable to work on a freight dock or drive a truck with a clutch. Hollinger has been compensated for the schedule injury to his toe. The only issue on appeal is whether Hollinger should receive additional workers' compensation benefits for the disability he alleges is caused to his spine as evidenced by the back and neck pain.

Hollinger has assigned two errors. In his first assignment of error, Hollinger argues that "[t]he Court erred in making a finding of fact that there was 'no evidence' of an unusual and extraordinary result following the Plaintiff's injury." This court has previously held that where an employee has suffered a schedule injury and from that injury some unusual or extraordinary condition develops which affects some member or the body itself, an increased award is proper and should be made to cover such additional disability. *Scamperino v. Federal Envelope Co.*, 205 Neb. 508, 288 N.W.2d 477 (1980); *Runyan v. Lockwood Graders, Inc.*, 176 Neb. 676, 127 N.W.2d 186 (1964). Whether or not other members or the body as a whole is affected by some unusual and extraordinary condition is a question of fact. *Scamperino, supra; Runyan, supra.* It is Hollinger's contention that the initial injury to his toe precipitated pain in his back and neck and thus resulted in an unusual and extraordinary condition. He contends he should be compensated for this disability. We do not agree.

Our standard of review accords to the findings of the compensation court the same force and effect as a jury verdict in a civil case, and such findings will not be set aside unless clearly wrong. *Wilson v. City of North Platte*, 221 Neb. 90, 375 N.W.2d 134 (1985). Further, in *Buck v. Iowa Beef Processors, Inc.*, 198 Neb. 125, 127-28, 251 N.W.2d 875, 877 (1977), we said:

> In testing the sufficiency of the evidence to support the findings of fact made by the Nebraska Workmen's Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful

party. Every controverted fact must be resolved in his favor and he should have the benefit of every inference that can reasonably be drawn therefrom.

In its order the three-judge panel found that "[i]n the present case, there is no evidence of an unusual or extraordinary result following the injury." Dr. Fitzgibbons testified at length that he felt there was a causal connection between the initial injury and Hollinger's back and neck pain. It was Dr. Paul's opinion that there was no correlation between the two. This court will not substitute its judgment for that of the compensation court where the record presents nothing more than conflicting medical testimony. *Gibson v. City of Lincoln*, 221 Neb. 304, 376 N.W.2d 785 (1985). The record before us contains sufficient evidence to support the Nebraska Workers' Compensation Court finding that the injury and the back and neck pain are not causally related. The factual findings made in this case were not clearly wrong. Hollinger's first assignment of error is without merit.

In his second assignment of error Hollinger argues that "[t]he Court erred in finding as a matter of law that *Scamperino v. Federal Envelope Co.*, 205 Neb. 508, 288 N.W.2d 477 (1980) was inapplicable." The three-judge panel found that *Scamperino, supra*, was factually inapplicable to this case. We agree. The three-judge panel stated: "We conclude that the plaintiff [Hollinger] has failed to sustain the burden of establishing that his spinal complaints resulted from the accident and injury of March 11, 1983." Our review of the record shows that the compensation court was not clearly wrong in its finding. An employee must show by competent medical testimony a causal connection between the alleged injury, the employment, and the disability. *Caradori v. Frontier Airlines*, 213 Neb. 513, 329 N.W.2d 865 (1983). Since no causal connection was found, Hollinger is not entitled to workers' compensation benefits beyond those awarded to him. *Scamperino* is not applicable, and Hollinger's second assignment of error is also without merit.

The order of the compensation court is affirmed.

AFFIRMED.