Argued and submitted December 23, 1987, reversed and remanded to Board with instructions to determine responsibility and penalties September 14, 1988

In the Matter of the Compensation of
Lori G. Finch, Claimant.
FINCH,
*Petitioner,*

*v.*

STAYTON CANNING CO. et al,
*Respondents.*

(WCB No. 83-03809, 85-00155
& 85-13714; CA A42313)

761 P2d 544

Edward J. Harri, Albany, argued the cause for petitioner. On the brief were J. David Kryger and Emmons, Kyle, Kropp, Kryger & Alexander, P.C., Albany.

Patric J. Doherty, Portland, argued the cause for

respondent Stayton Canning Co. With him on the brief was Rankin, VavRosky, Doherty, MacColl & Mersereau, Portland.

Allan M. Muir, Portland, argued the cause for respondent Dave's U.S. Gas. With him on the brief were Christopher B. Rounds, Ridgeway K. Foley, Jr., P.C., and Schwabe, Williamson & Wyatt, Portland.

No appearance for respondent American States Insurance.

Jerald P. Keene, Portland, argued the cause for respondents Tom's Auto Body and National Surety Corp. With him on the brief was Roberts, Reinisch & Klor, P.C., Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Claimant seeks review of a Workers' Compensation Board order which affirmed the referee's order upholding the denials of compensability and refusing penalties for late denial by Tom's Auto Body (Tom's). The Board did not reach the issue of responsibility. We review *de novo,* hold the claim compensable and reverse and remand to the Board with instructions to determine the issues of responsibility and penalties.

For 13 days in November, 1982, claimant worked at Stayton Canning Company (Stayton) as a seasonal employe peeling onions. After a few days of work, she developed a continuing pain at the base of her left wrist. She did not report the condition to her supervisor or seek medical attention then.

In December, 1982, claimant began to work at Dave's U.S. Gas (Dave's) as a service station attendant. Her left wrist pain continued, although it did not worsen. On February 1, 1983, claimant consulted Dr. Ellison, who noted that "[s]he may have a little ulnar nerve irritation," and encouraged her to continue with normal activities, including work. Claimant filed a workers' compensation claim against Stayton, which it denied.

Claimant continued to work for Dave's until July, 1983. For a short time thereafter, she did light clerical work at a feed store in California. She returned to Oregon and, in November, 1983, she began to work for Tom's, sanding and masking cars. Claimant continued to experience pain and returned to Ellison in December, 1983. He ordered electrical studies, which revealed some medial entrapment of the wrist. In January, 1984, he diagnosed her condition as left carpal tunnel syndrome. He felt that her condition was medically stationary and not disabling and did not recommend surgical treatment.

In October, 1984, claimant filed a compensation claim against Dave's. At its request, Dr. Steele examined claimant in November, 1984. He diagnosed mild carpal tunnel syndrome but stated that it was medically stationary. He noted that the symptoms would probably recur if she "goes back to doing vigorous work with her left hand and wrist." He did not believe that claimant's work at Dave's contributed to

her condition, which he believed was precipitated by her job peeling onions at Stayton. Dave's denied the claim.

The referee consolidated the claims against Stayton and Dave's and held an initial hearing in June, 1985. At the employers' request, the referee continued the hearing for further evidence, principally to depose Ellison. Claimant then filed a claim against Tom's in July, 1985. Tom's denied it on December 17, 1985. At Tom's request, Dr. Nathan examined claimant. He also diagnosed mild carpal tunnel syndrome. He did not recommend surgery. He concluded that claimant's condition was idiopathic and that the work actvities had not aggravated it.

The referee consolidated all three claims and reopened the hearing in February, 1986, to determine compensability. He held that claimant's carpal tunnel syndrome was work-related but not compensable, because claimant had not yet lost time from work or required medical treatment other than diagnostic services. He did not reach the responsibility issue. He also held that, because no compensation was due, Tom's owed no penalties for late denial. Ellison's deposition was introduced into the record. The referee wrote:

"I accept as true the testimony of Dr. Ellison that carpal tunnel syndrome is in itself merely a group of symptoms. The symptoms themselves are the disease, and without the symptoms there is no disease. * * * It is Dr. Ellison's opinion, with which I agree, that each symptomatic exposure permanently worsens the ability of the median nerve to get through the carpal tunnel unobstructed.

"It is Dr. Ellison's opinion, with which I agree, that initially, the symptoms started at Stayton Canning and therefore the disease started with work exposure at Stayton Canning. The symptoms increased at Dave's US Gas and therefore the disease worsened on a permanent basis, with the activity at Dave's US Gas. The symptoms further increased with the work exposure at Tom's Auto Body and thereby permanently worsened with the activity at Tom's Auto Body.

"Even with those findings, I do not believe that the claimant has shown a compensable disease. There will be no compensable carpal tunnel disease until such time as the claimant's work activities (or off the job activites) cause the claimant's condition to worsen to the point where she should

be taken off work or where surgery would be advisable. This has not yet happened.

"* * * * *

"In order for this to be a 'compensable injury' it must require medical services.

"While diagnostic services which are necessitated because of conditions which arise on the job * * * are medical services, all it does is entitle the claimant to have the diagnosis paid for by the employer.

"* * * * *

"[T]he only thing claimant is entitled to is payment for diagnostic services. There is no indication these services were not paid for by the various employers."

Claimant assigns as error that the Board affirmed the referee's ruling on compensability and penalties. She argues that, because she had shown that she had a work-related condition requiring medical services—either diagnostic or for treatment—she established a compensable claim. All three employers respond that claimant failed to prove the compensability of her claim, because it required no medical *treatment* and, therefore, presented only the "potential for a claim." Dave's and Stayton, relying on Nathan's opinion, also contend that claimant failed to prove that her carpal tunnel syndrome arose out of her employment. None of employers dispute the ruling of the referee that the symptoms are the disease.

■     We agree with the Board that the medical evidence in this record—and it is principally Ellison's extensive testimony—establishes that claimant's carpal tunnel syndrome was an occupational disease that her work at Stayton caused and that her employment both at Dave's and Tom's permanently worsened. We also find that her work was the major contributing cause of her disease. This case is unlike *AMFAC, Inc. v. Ingram,* 72 Or App 168, 694 P2d 1005 (1985), where the parties did not agree that the symptoms were the disease and the preponderance of the medical evidence established that the claimant had a pre-existing, asymptomatic carpal tunnel disease and that her work did not cause a worsening of that underlying condition.

■ The board erred, however, when it held that claimant's occupational disease was not a compensable claim because it required only *diagnostic* medical services. *Former* ORS 656.005(8)(a) defines a compensable injury as "an accidental injury * * * arising out of and in the course of employment requiring medical services or resulting in disability or death." As pertinent here, occupational diseases are considered "injuries." ORS 656.804; *Runft v. SAIF,* 303 Or 493, 498, 739 P2d 12 (1987). The statute does not define "medical services." *Former* ORS 656.005(8)(a) makes no distinction between diagnosis and treatment. If a claimant has symptoms and goes to a doctor, she ordinarily wants a diagnosis to learn what is wrong with her and what treatment, if any, is appropriate, and she wants treatment for relief from the disease. That no treatment is available for an injury or disease does not mean that a claimant is not injured or sick.

In *Brown v. SAIF,* 79 Or App 205, 717 P2d 1289, *rev den* 301 Or 666 (1986), the claimant was concerned about his health because he was exposed to asbestos at work. We held that he did not establish that he had a disease or was injured. In *Johnsen v. Hamilton Electric,* 90 Or App 161, 751 P2d 246 (1988), we held that, although the claimant had been exposed to asbestos, he did not have asbestosis or any other disease. In both *Brown* and *Johnsen,* we refused to hold compensable the claims for diagnostic medical services. In *Collins v. Hygenic Corp. of Oregon,* 86 Or App 484, 739 P2d 1073 (1987), however, the medical services, although only diagnostic, were required, because the claimant had suffered an injury and was entitled to know how badly he was hurt and if any treatment was appropriate. *See also Brooks v. D and R Timber,* 55 Or App 688, 692, 639 P2d 700 (1982). Similarly here, the diagnostic medical services are compensable because, on this record, claimant suffers from an occupational disease—carpal tunnel syndrome—and the medical services are required to determine what is wrong with her, even though no treatment is recommended.

■ Moreover, the referee assumed that an employer had paid for the diagnostic medical services and erroneously suggested that, therefore, the claim was not compensable. The test of compensability is whether the disease arises out of claimant's employment and requires medical services. ORS

656.802; *former* ORS 656.005(8)(a). To establish a compensable claim, claimant was not required to prove that none of her employers had paid for the services. Her claim for carpal tunnel syndrome is compensable.

It remains to be decided which employer is responsible and, if Tom's is responsible, whether it is liable for penalties for late denial. The medical evidence establishes that the disease started at Stayton and that work activities at both Dave's and Tom's worsened the underlying condition. The last injurious exposure rule for an occupational disease is applicable. Tom's also asserts, however, that the claim against it was untimely. Neither the referee nor the Board considered the issue of responsibility. Moreover, the Board's determination that no penalties were due from Tom's was, in the first instance, based on the erroneous ruling that the claim was not compensable.

Reversed and remanded to Board with instructions to determine responsibility and penalties.