DOROTHY SCHLUP, APPELLEE, V. AUBURN NEEDLEWORKS, INC., APPELLANT.
479 N.W.2d 440

Filed January 24, 1992.   No. 90-1264.

Jill Gradwohl Schroeder, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellant.

J. Michael Fitzgerald, of Carpenter, Rowen & Fitzgerald, P.C., for appellee.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Auburn Needleworks, Inc., appeals a Nebraska Workers' Compensation Court finding that the appellee, Dorothy Schlup, was rendered totally and permanently disabled as a result of an accident arising out of and in the course of her employment at the appellant's factory.

We affirm the decision of a three-judge panel of the Workers' Compensation Court.

In summary, Auburn Needleworks claims that the Workers' Compensation Court erred in finding that Schlup (1) was involved in an accident arising out of and in the course of her employment with Auburn Needleworks; (2) had "right and left wrist [sic] problems" as a result of the accident; (3) was permanently and totally disabled and entitled to workers' compensation benefits as a result of her accident; and (4) is entitled to benefits in excess of those provided for the loss of two members of her body, if in fact she is entitled to workers' compensation benefits for being totally and permanently disabled.

Auburn Needleworks has claimed the Workers' Compensation Court erred in awarding Schlup medical and

hospital expenses, but has failed to argue that assignment of error. This court will not consider assignments of error which are not discussed in the proponent's brief. See *State v. Spiegel, ante* p. 233, 474 N.W.2d 873 (1991).

## STANDARD OF REVIEW

Findings of fact by the Nebraska Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case and will not be set aside on appeal unless clearly wrong. . . . In testing the sufficiency of the evidence to support findings of fact made by the Nebraska Workers' Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. . . . Every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence.

*Cline v. County Seat Lounge, ante* p. 42, 48, 473 N.W.2d 404, 408 (1991).

## FACTS

Schlup, who at the time of trial was 54 years old, had been employed by Auburn Needleworks as a seamstress for 34 years, but left that company's factory work force intermittently to perform other menial labor. Her final employment at the appellant's factory was from 1982 until she left just prior to wrist surgery in June 1987. During her last year at Auburn Needleworks, Schlup performed a different task on the sewing assembly line than she had done previously. This new task required her to attach collars, cuffs, pockets, and zippers to denim jackets and jeans. Schlup had to pull, tug, and push the denim through the sewing machine she used. She also had to lift and carry the bundles of material she sewed, which bundles sometimes weighed up to 20 or 30 pounds.

As relevant here, the appellee's physical complaints began in March or April 1987. It was then that Schlup's fingers began to tingle, hurt, and get numb. Pain shot up both arms above her elbows, compelling her at times to stop work and run warm water over her hands so she could resume her work.

Schlup sought medical attention on May 8, 1987, when she visited Dr. Dana Farris. He diagnosed Schlup's ailment as bilateral carpal tunnel syndrome, which causes pain, numbness, and decreased function of the hands. Subsequently, surgery was performed on each of the appellee's wrists.

Following the two surgeries, one of her surgeons, Dr. Brent Stromberg, opined that Schlup was limited in her ability to work. He testified that Schlup's carpal tunnel syndrome was either caused by or worsened by the repetitive heavy hand motions that she was required to do in her employment. He testified that as a result of her condition, Schlup suffered a 40-percent impairment of each hand, which related to a 15-percent impairment of both upper extremities. Dr. Stromberg gave Schlup a medical release on November 19, 1987, to see how she would do at work. The appellee was able to work for only 1 day, when her hands began to swell and pain again restricted her ability to function. On February 11, 1988, Schlup was diagnosed by Dr. Stromberg as suffering from reflex sympathetic dystrophy in her hands, a physical condition in which pain and discomfort continue even after the initial reason for the pain is resolved.

On June 21, 1988, nearly a year after her surgeries, Dr. Stromberg again released Schlup for work with specific limitations that restricted her from lifting anything in excess of 10 to 15 pounds. Dr. Stromberg's restrictions required the appellee to avoid repetitive hand activities. These restrictions precluded Schlup from returning to employment at the Auburn Needleworks factory. Schlup continued to suffer from bilateral median nerve infirmities and pain, according to Dr. Stromberg.

Schlup testified that she had problems picking up and grasping objects, that she could not pick up a cup of coffee without using both hands, and that most daily household tasks caused her pain.

The appellee underwent occupational and rehabilitation therapy with rehabilitation counselor Jack Greene between September 1988 and May 1990. Greene administered aptitude and ability tests which disclosed that Schlup has extremely limited job-market skills. Wide-range achievement tests placed her at a fifth grade level in reading skills and at a third grade

level in spelling skills. In those skills, Schlup placed in the bottom 1 percent of the population. The testing disclosed that in math skills, the appellee performed at a seventh grade level, or in the bottom 10 percent of the population. Schlup's general aptitude test reflects scores well below average for general learning ability and verbal and numerical aptitudes. The appellee left high school in 1953 in the middle of the 10th grade because she "just couldn't get the hang of it," and has yet to complete her GED. Schlup additionally suffered from severe degenerative disk disease for which she underwent surgery in 1969. Because of her back problems, she is unable to sit for long periods of time and has lifting limitations.

Schlup filed a petition with the Workers' Compensation Court on September 20, 1989, alleging that she sustained carpal tunnel syndrome in an accident on or about May 8, 1987, while engaging in constant repetitive use of her hands in sewing at the Auburn Needleworks. This, she alleged, rendered her permanently and totally disabled. Auburn Needleworks denied the allegations and claimed that any disability suffered by Schlup resulted from an inherent condition not related to the course of her employment. Dr. Stromberg testified that as of August 3, 1988, Schlup had reached maximum medical recovery.

A three-judge panel of the Workers' Compensation Court found:

[T]he plaintiff was in the employ of the defendant [Auburn Needleworks] as a sewing factory worker and while so employed and on said date and while engaged in the duties of her employment she suffered injuries to both arms as a result of an accident arising out of and in the course of her employment by the defendant when, while plaintiff was using her hands in sewing heavy material, she developed tingling, numbness and pain in both arms to areas above the elbows. As a result of said accident and injury the plaintiff incurred medical and hospital expense and, in accordance with the facts of this case, has been rendered totally and permanently disabled.

The court further found that "[m]easured by the test of employability or impairment of earning power or earning

capacity . . . .recently approved at *Heiliger v. Walters [&] Heiliger Electric, Inc.*, 236 Neb. 459, [461] N.W.2d [565] (1990) . . . we have little difficulty in concluding that the plaintiff is permanently and totally disabled."

The court awarded temporary total disability benefits from May 8, 1987, to the date of the hearing on July 23, 1990; permanent total disability benefits from the date of the hearing so long as Schlup remains permanently and totally disabled; and indemnification of Schlup's medical and hospital expenses for her work-related injury. It is these rulings that Auburn Needleworks has appealed.

## ACCIDENT

Auburn Needleworks first contends that Schlup did not suffer a work-related accident. Under the provisions of the Workers' Compensation Act, compensation is allowed when personal injury is caused to an employee by an accident or occupational disease, arising out of and in the course of his or her employment, if the employee was not willfully negligent at the time of receiving such injury. Neb. Rev. Stat. § 48-101 (Reissue 1988). In *Maxson v. Michael Todd & Co.*, 238 Neb. 209, 212, 469 N.W.2d 542, 544 (1991), we recognized:

> While it is . . . quite clear that a condition resulting from the cumulative effects of repeated work-related trauma has some characteristics of both an accidental injury and an occupational disease . . . the compensability of . . . a condition [resulting from the cumulative effects of repeated work-related trauma] is to be tested under the statutory definition of accident.

Under Neb. Rev. Stat. § 48-151(2) (Reissue 1988), an accident is defined as "an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." See *Sandel v. Packaging Co. of America*, 211 Neb. 149, 317 N.W.2d 910 (1982).

The "unexpected or unforeseen" requirement of § 48-151(2) is satisfied if either the cause was of an accidental character or the effect was unexpected or unforeseen. See *McLaughlin v. Self-Insurance Servs.*, 219 Neb. 260, 361 N.W.2d 585 (1985).

There is no indication in the record that Schlup's condition was either expected or foreseeable. While she had complained of pain and weakness in her hands for a time in 1980 and a sprained wrist in 1981, Schlup had no complaints about her upper extremities for 6 years after suffering the sprained wrist. From the evidence, the Workers' Compensation Court could properly conclude that Schlup's bilateral carpal tunnel syndrome which was diagnosed in 1987 was not expected or foreseen. It could also properly conclude that Schlup's 1987 diagnosis was not causally connected with her complaints of 1980 and 1981.

The second specification of § 48-151(2) requires that an employee's injury must occur "suddenly and violently" to be compensable. This court has held that "suddenly and violently" does not mean "instantaneously and with force." The specification "suddenly and violently" is satisfied if the injury occurs at an identifiable point in time, requiring the employee to discontinue employment and seek medical treatment. *Sandel, supra.* In *Hayes v. A.M. Cohron, Inc.*, 224 Neb. 579, 400 N.W.2d 244 (1987), *disapproved on other grounds, Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990), the court noted that the definition of "accident," as used in § 48-101, includes injuries resulting from activities which create a series of repeated traumas ultimately producing disability. The *Sandel* court recognized that the nature of the human body being such as it is, not all injuries to the body are caused instantaneously and with force, but may indeed nevertheless occur suddenly and violently, even though they have been building up for a considerable period of time and do not manifest themselves until they cause the employee to be unable to continue his or her employment. *Id.* This specification of "suddenly and violently" is to distinguish compensable injuries such as those in *Sandel* from chronic conditions which develop over a period of many years where the injury cannot be traced to a particular job or activity of the worker.

Unlike the situation in *Vencil v. Valmont Indus., ante* p. 31, 473 N.W.2d 409 (1991), wherein the claimant's symptoms developed over a period of not less than 7 years and required no

interruption or discontinuance of his employment until almost 10 years had elapsed, here, Schlup's condition manifested itself within less than 3 months, during which time she had to periodically stop her work and run warm water over her hands to relieve the pain in her upper extremities. On May 8, 1987, the pain was severe enough to require Schlup to stop work and seek medical attention. Clearly, there was sufficient evidence for the Workers' Compensation Court to conclude that May 8, 1987, was the identifiable point in time of Schlup's injuries and that the facts surrounding Schlup's injuries satisfied the second requirement of § 48-151(2). The compensation court's decision in Schlup's case is in accord with the decision in *Erving v. Tri-Con Industries*, 210 Neb. 339, 314 N.W.2d 253 (1982). There, an employee suffered from carpal tunnel syndrome for a period of 4 months. The pain began gradually, became worse, and forced Erving to seek medical attention. These facts satisfied the requirement in § 48-151(2) that the injury occur "suddenly and violently."

The third specification in § 48-151(2), that the accident produce objective symptoms, is satisfied if the symptoms manifest themselves according to the natural course of such things without any independent intervening cause. See *Sandel v. Packaging Co. of America*, 211 Neb. 149, 317 N.W.2d 910 (1982).

> " 'We are of the opinion that the expression has a wider meaning, and that symptoms of pain, and anguish, such as weakness, pallor, faintness, sickness, nausea, expressions of pain clearly involuntary, or any other symptoms indicating a deleterious change in the bodily condition may constitute objective symptoms as required by the statute.' "

*Sandel, supra* at 157, 317 N.W.2d at 915-16.

Schlup clearly manifested such symptoms when she found she could not continue her work without periodically running water over her hands to relieve pain in her upper extremities. The injuries in her upper extremities manifested themselves when her fingers began to tingle, hurt, and get numb, and when pain shot up both arms above her elbows. When she consulted Dr. Farris on May 8, 1987, the doctor found Schlup's grip

strength slightly decreased bilaterally. Through testing, Dr. Farris found objective symptoms of the appellee's bilateral carpal tunnel syndrome. Prior to operating on Schlup's right wrist, Dr. Bruce Miller, a surgeon, also performed tests, including a percussion test around Schlup's wrists. As a result of these objective tests, Dr. Miller diagnosed the appellee as having a typical carpal tunnel syndrome in both her wrists. The facts of this case are sufficient to support the Workers' Compensation Court's finding that Schlup suffered a work-related accident.

## WORK-RELATED ACTIVITY

Auburn Needleworks' second issue is whether the injury Schlup suffered was caused by work-related activities. To recover compensation benefits, an injured worker is required to prove by competent medical testimony a causal connection between the alleged injury, the employment, and the disability. See *Hollinger v. Consolidated Motor Freight*, 223 Neb. 449, 390 N.W.2d 518 (1986). The injured worker must show, by a preponderance of the evidence, that the employment proximately caused an injury which resulted in disability compensable under the Workers' Compensation Act. *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990).

Based upon a reasonable degree of medical certainty, Dr. Miller testified that Schlup's bilateral carpal tunnel syndrome was caused by her work at Auburn Needleworks. Dr. Stromberg gave his opinion, based upon a reasonable degree of medical certainty, that Schlup's carpal tunnel syndrome problems were caused by or worsened by the repetitive heavy hand motions that she had to do in her employment. From this evidence the compensation court could properly find that Schlup's bilateral carpal tunnel syndrome was related to her work at Auburn Needleworks.

## EXTENT OF DISABILITY

Auburn Needleworks next contends that Schlup is not totally and permanently disabled and that, therefore, she is not entitled to either temporary total or permanent total disability benefits.

This court has long held that whether a plaintiff in a

Nebraska workers' compensation case is totally and permanently disabled is a question of fact. *Paris v. J. A. Baldwin Mfg. Co.*, 216 Neb. 151, 342 N.W.2d 198 (1984). Total and permanent disability contemplates the inability of the worker to perform any work which he or she has the experience or capacity to perform. *Krijan v. Mainelli Constr. Co.*, 216 Neb. 186, 342 N.W.2d 662 (1984). It does not mean a state of absolute helplessness, but means disablement of an employee to earn wages in the same kind of work, or work of a similar nature, that he or she was trained for or accustomed to perform, or any other kind of work which a person of his or her mentality and attainments could do. *Mata v. Western Valley Packing*, 236 Neb. 584, 462 N.W.2d 869 (1990).

We have also held that a claimant is entitled to an award under the Workers' Compensation Act for a work-related injury and disability if the claimant shows, by a preponderance of evidence, that the claimant sustained an injury and disability proximately caused by an accident which arose out of and in the course of the claimant's employment, even though a preexisting disability or condition has combined with the present work-related injury to produce the disability for which the claimant seeks an award. *Heiliger v. Walters & Heiliger Electric, Inc., supra.*

Under this analysis, the Workers' Compensation Court did not err in looking at Schlup's work-related injury, as well as her existing back limitations and academic shortcomings, in finally determining that she is totally and permanently disabled.

In assessing the extent of Schlup's disablement, the compensation court relied upon *Heiliger v. Walters & Heiliger Electric, Inc., supra* at 470-71, 461 N.W.2d at 574, where we stated:

> "[T]otal disability may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor market. The essence of the test is the probable dependability with which claimant can sell his services in a competitive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary

good luck, or the superhuman efforts of the claimant to rise above his crippling handicaps."

Although Schlup might be physically able to perform some of the requirements of the jobs listed by Greene, the compensation court could properly find that her lack of mental abilities, coupled with her physical limitations, did render her unemployable.

Professor Larson has written that "[u]nder the odd-lot doctrine, which is accepted in virtually every jurisdiction, total disability may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor market." 2 A. Larson, The Law of Workmen's Compensation § 57.51(a) at 10-164.68 (1989). See, e.g., *Odom Const. Co. v. U. S. Dept. of Labor*, 622 F.2d 110 (5th Cir. 1980), *cert. denied* 450 U.S. 966, 101 S. Ct. 1482, 67 L. Ed. 2d 614 (1981) (54-year-old worker with a fourth grade education, no formal technical training, and a work history of jobs requiring heavy arm work was found to be totally and permanently disabled when an accident injured his dominant arm, weakened his grasp, and made it impossible for him to perform jobs he had performed previously). See, also, *Krijan v. Mainelli Constr. Co., supra*; *Mata v. Western Valley Packing, supra*.

Professor Larson also states:

A considerable number of the odd-lot cases involve claimants whose adaptability to the new situation created by their physical injury was constricted by lack of mental capacity or education. This is a sensible result, since it is a matter of common observation that a man whose sole stock in trade has been the capacity to perform physical movements, and whose ability to make those movements has been impaired by injury, is under a severe disadvantage in acquiring a dependable new means of livelihood . . . by comparison, say, with a book salesman who can continue to make commissions after having sustained serious brain injury.

2 A. Larson, *supra*, § 57.51(d) at 10-164.84(24), (37), and (38).

Schlup could easily have been considered by the Workers' Compensation Court to be an odd-lot case. She had few

appreciable academic or vocational skills and could not sit for long periods at a time, and the evidence is substantial that after suffering the bilateral carpal tunnel syndrome, she could no longer earn a living with her hands. Because her hands are her only means of earning a living, she was rendered totally and permanently disabled when her hands and arms were injured.

Appellant's contention that Schlup is not totally disabled is apparently based upon evidence that Dr. Stromberg continues to encourage Schlup to engage in as much activity as she can and that Greene, the rehabilitation counselor, determined that she was qualified to perform a variety of light-duty occupations. This work included being a cashier, cardiac monitor technician, telephone operator, sales clerk, hotel clerk, fast-food worker, and restaurant hostess.

Two other rehabilitation experts, David Hauswald and Alfred Marchisio, testified that because of her lack of appreciable skills and her physical and academic limitations, they doubted Schlup was a candidate for gainful employment. She attempted a job as an insurance telemarketer, but found that not only was she unable to sit for an extended period of time, but she became tonguetied and was unable to talk to the public. Evidence showed that for most of the jobs listed by Greene, the physical limitations regarding use of her hands and her lack of social and academic skills would keep her from being employed.

The Workers' Compensation Court panel found as a fact that Schlup was totally disabled by the injuries to her arms. We cannot say that finding was clearly wrong.

Since we are affirming the Workers' Compensation Court's finding that Schlup was rendered totally and permanently disabled in a work-related accident in the course of her employment at Auburn Needleworks, there is no need to consider appellant's fourth assignment of error, regarding compensation pursuant to § 48-121(3) (Reissue 1988).

Pursuant to Neb. Rev. Stat. § 48-125 (Reissue 1988), appellee is awarded $750 as attorney fees in this court. Appellee is also entitled to interest as provided in § 48-125(2).

AFFIRMED.

BOSLAUGH, J., participating on briefs.

SHANAHAN, J., concurring.

Certainly, Dorothy Schlup's claim is compensable under the Nebraska Workers' Compensation Act, but the majority's view of compensability calls for an explanation, especially in view of *Vencil v. Valmont Indus., ante* p. 31, 473 N.W.2d 409 (1991), decided just a few months ago, when this court rejected compensability of Daniel J. Vencil's claim based on the cumulative effects of repetitive work-related trauma. In *Vencil*, this court rejected compensability because there was no "identifiable moment" which produced objective symptoms requiring medical attention and the interruption or discontinuance of employment. *Id.* at 32, 473 N.W.2d at 411.

Dorothy Schlup based her workers' compensation claim on a "bilateral carpal tunnel syndrome," an injury sustained as the result of her "constant repetitive use of her hands in sewing," which involved Dorothy Schlup's frequently twisting her wrists during protracted periods in her employment at Auburn Needleworks. Daniel Vencil based his claim on injury caused by a work-related accident or an occupational disease attributable to his frequently twisting his back, bending, and stooping in his employment at Valmont. In Dorothy Schlup's case, Auburn Needleworks denied that her injury was "the result of or attributable to any accident or occupational disease."

In a comparison of Dorothy Schlup's injury with the injury of Daniel Vencil, there are some striking and substantial similarities, with one major and crucial dissimilarity:

|  | DOROTHY SCHLUP | DANIEL VENCIL |
|---|---|---|
| Age at injury: | 50 years | 30 years |
| Began employment: | 1982 | 1979 |
| Duration of employment: | 5 years | 10 years |
| Type of work activity: | Twisting wrists in sewing collars to coat jackets; pulling and pushing bundles of denim weighing 20 to 30 lbs. | Twisting body and back, bending, stooping, and lifting and pushing objects weighing up to 200 lbs. |

| | DOROTHY SCHLUP | DANIEL VENCIL |
|---|---|---|
| First observation of any physical problem: | 1987 | 1986 |
| Diagnosis of physical condition: | Carpal tunnel syndrome | Lumbar disk disease |
| Nature of injury: | Tissue or structures in carpal tunnel (canal from hand through wrist to arm) enlarge from swelling due to trauma, irritation, or infection; median nerve, which runs from the palm of the hand through the carpal or wrist tunnel into the arm, is "pinched" or compressed by other enlarged tissue in the tunnel; results in pain, numbness in digits, and arm pain | Deterioration of lumbar disk, i.e., deterioration of fibers around disk, allowing disk to "bulge out"; results in pressure on nerves along the spinal column and pain; medically analogous to carpal tunnel syndrome |
| Medical history: | No prior condition affecting the injury which is the basis for compensation claim | No prior condition affecting the injury which is the basis for compensation claim |
| Medical causation: | Repetitive motion; heavy hand movement: pronation (palm down) and supination (palm up) in work-related activities | Repetitive motion; heavy lifting, twisting, and bending in work-related activities |
| Effects of injury: | Weakness in wrist; inability to grasp objects in employment | Weakness in back; inability to lift objects in employment |
| Medical treatment: | Surgery to alleviate condition | Surgery to alleviate condition |
| Disability: | Inability to perform employment duties; discontinuance of employment | Inability to perform employment duties; discontinuance of employment |
| "Identifiable moment" of injury, i.e., a specific traumatic incident: | None | None |
| Compensability: | Yes | No |

Thus, Dorothy Schlup experienced carpal tunnel syndrome, "a complex of symptoms resulting from compression of the median nerve in the carpal tunnel, with pain and burning or tingling paresthesias in the fingers and hand, sometimes extending to the elbow." The Sloane-Dorland Annotated

Medical-Legal Dictionary 689 (1987).

Neb. Rev. Stat. § 48-151(3) (Reissue 1988) states:

The term occupational disease shall mean only a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process, or employment and shall exclude all ordinary diseases of life to which the general public is exposed.

In *Maxson v. Michael Todd & Co.*, 238 Neb. 209, 212, 469 N.W.2d 542, 544 (1991), this court recognized the following definition for "disease": " '[A]n impairment of the normal state of the living animal . . . body or of any of its components that interrupts or modifies the performance of the vital functions, being a response to environmental factors [such as] industrial hazards . . . .' " The preceding definition substantially coincides with the standard medical definition of "disease," namely: "[A]ny deviation from or interruption of the normal structure or function of any part, organ, or system (or combination thereof) of the body that is manifested by a characteristic set of symptoms and signs and whose etiology, pathology, and prognosis may be known or unknown." Dorland's Illustrated Medical Dictionary 385 (26th ed. 1981). Also, from a medical standpoint, an "occupational disease" is "due to factors involved in one's employment, e.g., various forms of pneumoconiosis or dermatitis." *Id.* at 392. Thus, an occupational disease is a condition which causes impairment, deviation, or interruption of the normal structure or function of a worker's body and which results from hazards or conditions peculiar to a particular occupation or employment. See *Vencil v. Valmont Indus., ante* p. 31, 473 N.W.2d 409 (1991) (Shanahan, J., dissenting).

Several courts, construing workers' compensation statutes with language identical or substantially similar to that in § 48-151(3), have concluded that injury and disability attributable to carpal tunnel syndrome which is causally related to work activities is compensable as an "occupational disease"; for instance, see, *Lettering v. Guy*, 321 Md. 305, 582 A.2d 996 (1990); *Kinney v. Tupperware Co.*, 117 Idaho 765, 792 P.2d 330 (1990); *Wood v. Allison Apparel Marketing, Inc.*, 11 Va. App.

352, 398 S.E.2d 110 (1990); *Johnson v. Spectra Physics*, 77 Or. App. 1, 712 P.2d 125 (1985), *aff'd in relevant part* 303 Or. 49, 733 P.2d 1367 (1987); *Finch v. Stayton Canning Co.*, 93 Or. App. 168, 761 P.2d 544 (1988); *Segar v. Garan, Inc.*, 388 So. 2d 164 (Miss. 1980); *Prater v. Thorngate, Ltd.*, 761 S.W.2d 226 (Mo. App. 1988) (rehearing or transfer to Supreme Court of Missouri denied December 14, 1988); and *Jackson v. Risby Pallet and Lumber Co.*, 736 S.W.2d 575 (Mo. App. 1987) (rehearing or transfer to Supreme Court of Missouri denied September 8, 1987).

Referring to the comparison between the injuries and disabilities of Dorothy Schlup and Daniel Vencil, one immediately sees that Dorothy Schlup's work-related injury consisted of pressure on the median nerve in her carpal tunnel and resulted in her disability, while Daniel Vencil's work-related injury consisted of pressure on the nerves along his vertebral, or spinal, column and resulted in his disability. In both situations, the injury and ultimate disability were attributable to repetitive trauma sustained during the employee's work-related activities. What is the medical and legal distinction between the work-related injuries of Dorothy Schlup and Daniel Vencil? Is the distinction based on the fact that Dorothy Schlup was employed for 5 years before her disability, whereas Daniel Vencil was employed 10 years before his disability? If so, injury from repetitive trauma during employment less than 5 years is compensable, while injury from repetitive trauma during employment lasting more than 5 years is noncompensable. That infirm distinction might be best characterized as a case of acute arbitrariness. Or does compensability lie in the fact that Dorothy Schlup's injury was to her wrists and arms, whereas Daniel Vencil's injury was to his low back? If the repetitive injury is to an employee's wrist, the claim is compensable, but if the repetitive injury is to the employee's low back, the claim is noncompensable. Well, there you have it; nobody has quite explained it that way before.

Since this court continues to lie in its Procrustean bed made of "repetitive trauma" decisions based on a distorted definition of "accident" in the Nebraska Workers' Compensation Act, one hoped that Dorothy Schlup's case would have afforded

this court an "identifiable moment" for application of "occupational disease," expressed in the Workers' Compensation Act, to injuries and disability from the cumulative effect of repetitive work-related trauma. Nonetheless, one can still hope. Although "[h]ope springs eternal," employees injured by repetitive work-related trauma are a little more mortal and need a remedy under the Nebraska Workers' Compensation Act.

Nevertheless, because Dorothy Schlup clearly established that her injury and disability were attributable to carpal tunnel syndrome as an occupational disease, the judgment of the Workers' Compensation Court is otherwise correct and, therefore, must be affirmed.

WHITE and GRANT, JJ., join in this concurrence.